[No. 13341.    Department Two. — January 6, 1892.]

JAMES E. ROSS, RESPONDENT, v. JOHN M. CONWAY ET AL., APPELLANTS.

CONFIDENTIAL RELATIONS — PRESUMPTION OF UNDUE INFLUENCE. — One who holds a confidential relation towards another will not be permitted to take advantage of that relation in favor of himself, or deal with the other upon terms of his own making, and in every such transaction the law will presume that he who held an influence over the other exercised it unduly to his own advantage, and the transaction will not be upheld, unless it is shown that such other had independent advice, and that his act was not only the result of his own volition, but that he both understood the act he was doing, and comprehended its effect.

ID. — INFLUENCE OF SPIRITUAL ADVISER OF DYING PERSON — BENEFIT TO ADVISER. — The influence which the spiritual adviser of one who is about to die has over such person being one of the most powerful that can be exercised upon the human mind, especially if such mind is impaired by physical weakness, in any transaction between them wherein the adviser receives any advantage, a court of equity will not enter into an investigation of the extent to which such influence has been exercised, but will set aside any such transaction, whether the benefit accrue to the adviser or to some other recipient who, through such influence, may have been made the beneficiary thereof.

Id. — Cancellation of Deeds of Trust — Undue Influence by Catholic Priest. — In an action brought by the heirs of a decedent to cancel and annul certain deeds of trust executed by the decedent when she was about to die, on the ground that at the time of their execution the decedent was weak in body and mind, and that the grantee, who was the pastor of a Roman Catholic church of which she had been for many years a member, and who was also her spiritual adviser, unduly influenced her to execute the deeds for the benefit of himself and the church, a finding that the decedent had no independent advice upon the subject of making the deeds is fully sustained by the evidence, where it shows that the attorney who prepared the deeds was introduced by the priest, and that the only persons with whom she had any interview, or from whom she could receive any advice respecting the same, were the said attorney and the priest, the latter remaining in her presence during the interview with the attorney.

Id. — Sole Presence of Priest and his Attorney — Absence of Independent Advice. — Assuming that the priest, by virtue of his relation to the decedent, had acquired an influence over her, his act in not insisting that she should have independent advice, and in continuing to remain in her presence during the interview with the attorney whom he had introduced to her, and who was the only other person he permitted her to see, was an undue exercise of such influence.

Appeal from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*George D. Collins, D. M. Delmas,* and *George A. Johnson,* for Appellants.

*John A. Wright,* for Respondent.

Harrison, J. — The plaintiff, as the sole heir of his mother, Elizabeth G. Ross, brought this action to cancel and annul two certain deeds of trust conveying certain real estate in Santa Rosa, executed by his mother, August 11, 1888, and August 18, 1888, respectively, alleging that at the time of their execution his mother was weak in body and that her mind was impaired, and that the defendant Conway, who was the pastor of the Roman Catholic church of Santa Rosa, of which she had been for many years a member, and who was also her spiritual adviser, had thereby acquired great influence over her, and, taking advantage of such influence and of her mental weakness, had caused her to execute the said

deeds of trust for the benefit of himself and of the church of which he was the pastor. The defendants denied these allegations, and the cause was tried by the court, a jury having been called in as advisory to the court upon certain issues. The verdict of the jury and the findings of the court were in support of the allegations of the complaint, and judgment was rendered in favor of the plaintiff. A motion for a new trial having been made and denied, an appeal has been taken from both the judgment and the order denying a new trial.

. The two deeds of trust are substantially the same, the last one having been executed merely for the purpose of correcting an erroneous description in the first. Under the trust created by the deeds, the trustees are directed to sell one of the parcels of land " as soon as practicable," and out of the proceeds thereof apply eight thousand dollars in the improvement of the other parcel, and pay the remainder of the proceeds to the defendant Conway. Out of the income to be derived from the parcel to be improved, seventy-five dollars per month was to be paid to the plaintiff, and the remainder, monthly, "to the pastor of the Roman Catholic church in Santa Rosa, to be disbursed by him in such manner as he may deem charitable." Other provisions, contingent upon the death or change in circumstances of the plaintiff, are unnecessary to be repeated here.

The issues before the court were, in substance, whether Mrs. Ross was, at the respective dates on which the deeds of trust were executed, of weak mind, or able to comprehend the provisions of the instruments; and, whether the defendant Conway used the influence which he had acquired over her by virtue of being her spiritual adviser for the purpose of procuring her to make such disposition of her property. Upon these issues there was much conflicting evidence before the court, both in the testimony of the witnesses who were examined, as well as in the circumstances under which the instruments were executed and the purposes held by Mrs. Ross with reference to her son and to the church. Upon

the evidence before it, the court found in favor of the plaintiff. This finding was in accordance with the verdict of the jury, and upon a motion for a new trial, in which the evidence was again brought before the court for consideration, it adhered to its former conclusion. Under these circumstances, we cannot disregard its finding. Inasmuch, however, as counsel have elaborately argued the facts, we have examined the record, and are of the opinion that the evidence fully justifies the findings of the court.

The court finds that at the dates of the execution of the deeds of trust Mrs. Ross was of weak mind and in a dying condition, and that she died on the 20th of August; that the defendant Conway was, and had for a long time previously been, the pastor of the Roman Catholic church at Santa Rosa, and the spiritual adviser of Mrs. Ross; that a confidence was reposed in him by her, and that there existed on his part an influence and apparent authority over her arising out of his relation to her as her spiritual adviser, and that he took an unfair advantage of this influence, and used this confidence and authority for the purpose of procuring her to execute the two deeds of trust. The court also finds that Mrs. Ross had in December, 1887, executed a will of all her estate, with the exception of some minor legacies, in favor of the plaintiff herein, and that the provision in the deeds of trust for the defendants other than the defendant Conway were without any consideration from them, but were made solely through the influence of Conway.

The rule is inflexible that no one who holds a confidential relation towards another shall take advantage of that relation in favor of himself, or deal with the other upon terms of his own making; that in every such transaction between persons standing in that relation the law will presume that he who held an influence over the other exercised it unduly to his own advantage, or, in the words of Lord Langdale in *Casborne* v. *Barsham*, 2 Beav. 78, "the inequality between the transacting parties is so great, that, without proof of the exercise of

power beyond that which may be inferred from the nature of the transaction itself, this court will impute an exercise of undue influence"; that the transaction will not be upheld, unless it shall be shown that such other had independent advice, and that his act was not only the result of his own volition, but that he both understood the act he was doing and comprehended its result and effect. This rule finds its application with peculiar force in a case where the effect of the transaction is to divert an estate from those who by the ties of nature would be its natural recipients, to the person through whose influence the diversion is made, whether such diversion be for his own personal advantage, or for the advantage of some interest of which he is the representative. It has been more frequently applied to transactions between attorney and client or guardian and ward, than to any other relation between the parties, but the rule itself has its source in principles which underlie and govern all confidential relations, and is to be applied to all transactions arising out of any relation in which the principle is applicable. It is termed by Lord Eldon "that great rule of the court that he who bargains in any matter of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence." (*Gibson* v. *Jeyes*, 6 Ves. 278.) It was said by Sir Samuel Romilly, in his argument in *Huguenin* v. *Baseley*, 14 Ves. 300, that "the relief stands upon a general principle applying to all the variety of relations in which dominion may be exercised by one person over another," — a principle which was afterwards affirmed by Lord Cottenham in *Dent* v. *Bennett*, 4 Mylne & C. 277, saying that he had received so much pleasure from hearing it uttered in that argument that the recollection of it had not been diminished by the lapse of more than thirty years.

That the influence which the spiritual adviser of one who is about to die has over such person is one of the most powerful that can be exercised upon the human mind, especially if such mind is impaired by physical weakness, is so consonant with human experience as to

need no more than its statement; and in any transaction between them wherein the adviser receives any advantage, a court of equity will not enter into an investigation of the extent to which such influence has been exercised. Any dealing between them under such circumstances will be set aside as contrary to all principles of equity, whether the benefit accrue to the adviser or to some other recipient who, through such influence, may have been made the beneficiary of the transaction. These principles have been so invariably announced whenever the question has arisen, that a mere reference to the authorities will suffice. (*Norton* v. *Relly*, 2 Eden, 286; *Huguenin* v. *Baseley*, 14 Ves. 273; *Thompson* v. *Heffernan*, 4 Dru. & War. 291; *Dent* v. *Bennett*, 4 Mylne & C. 269; *In re Welsh*, 1 Redf. 246; *Richmond's Appeal*, 59 Conn. 226; *Ford* v. *Hennessy*, 70 Mo. 580; *Pironi* v. *Corrigan*, 47 N. J. Eq. 135; *Connor* v. *Stanley*, 72 Cal. 556; 1 Am. St. Rep. 84; 1 Bigelow on Fraud, 352; Story's Eq. Jur., sec. 311.)

The finding of the court that Mrs. Ross did not have any independent advice upon the subject of making the deeds of trust is fully sustained by the evidence. It appears from the record that the attorney who prepared the instruments was introduced to her by Conway, and that the only persons with whom she had any interview, or from whom she could receive any advice respecting the same, were this attorney and the defendant Conway. On the 9th of August she had expressed to Conway a desire to make a testamentary disposition of her property, and upon his suggestion that Mr. Collins was a suitable person, she requested that he would send him to her at the hospital where she was lying. He thereupon sought Collins, and, telling him the wish of Mrs. Ross, accompanied him to the hospital. On their way he told Collins of the mode in which she proposed to dispose of her property, and, after their arrival, remained in the room with them while she was giving directions about the will, going out, however, occasionally, for short intervals, to visit other people in the hospital, and leav-

ing the building before the will was formally executed. Two days later he visited Collins at his office, and after hearing the will read, he made to Collins a suggestion of some changes, and whether a deed of trust would not be preferable to a will.   An appointment was then made between him and Collins to meet that afternoon in the room of Mrs. Ross at the hospital.   After their arrival at the hospital, Conway made a suggestion to her that she execute a deed of trust instead of a will, and also other suggestions in reference to her disposition of the property.   Only himself and Collins were in the room during this consultation, he, however, leaving it temporarily a few times during the period over which the interview extended, but remaining until Collins had received all the directions that she gave.

Assuming that by virtue of his relation to her he had acquired an influence over her, it must be held that in the transaction under investigation there was an undue exercise of such influence; that by not insisting that she should have independent advice, and by continuing to remain in her presence during the interview with the only other person whom he permitted to see her, he exercised an influence over her actions, which, though unseen and inaudible, was none the less effective in its results.   "The question is," said Lord Eldon in *Huguenin* v. *Baseley*, 14 Ves. 300, " not whether she knew what she was doing, had done, or proposed to do, but how the intention was produced; whether all that care and providence was placed round her, as against those who advised her, which from their situation and relation with respect to her they were bound to exert on her behalf."

While the contract of purchase made between the defendant Conway and the trustees under the instruments sought to be annulled was irrelevant to any material issue before the court, and would have been properly excluded from evidence, we are unable to see that its admission could in any way have been prejudicial to the rights of the appellants.

The judgment and order denying a new trial are affirmed.

DE HAVEN, J., and McFARLAND, J., concurred.

Hearing in Bank denied.