[Sac. No. 2230. Department Two.—March 23, 1916.]

J. P. COX, Plaintiff and Cross-Defendant, Appellant, v. EDWARD SCHNERR, Defendant and Cross-Complainant, Respondent.

QUIETING TITLE—EXECUTION AND DELIVERY OF DEED—DENIAL OF IN ANSWER—PLEADING IN HAEC VERBA IN ANSWER TO CROSS-COMPLAINT—FAILURE TO FILE AFFIDAVIT OF DENIAL.—Where the defendant in an action to quiet title by answer and cross-complaint specifically identifies and attacks the due execution and delivery of the deed under which the plaintiff claims, and the plaintiff, in his answer to the cross-complaint, sets forth the deed *in haec verba*, the defendant, by failing to file an affidavit as required by section 448 of the Code of Civil Procedure, did not admit the execution and delivery of the deed.

ID.—DEED—DELIVERY—PRESUMPTION ARISING FROM PRODUCTION BY GRANTEE.—While the production of the deed by the grantee named therein is *prima facie* evidence of delivery, this presumption may be overcome by evidence, and in the present case is overcome.

ID.—FRAUDULENT DEED—MANUAL TRADITION NOT A LEGAL DELIVERY.—Where a deed is fraudulently obtained, the mere manual tradition of it to the grantee could not be in a legal sense a delivery.

ID.—CONFIDENTIAL RELATIONS BETWEEN PARTIES TO DEED—FRAUD OF GRANTEE—EVIDENCE.—The evidence in this case abundantly establishes that the deed of gift in question was obtained through the fraud of the grantee, who at the time it was made was the trusted friend and confidential adviser of the grantor.

ID.—BURDEN OF PROOF TO SHOW FRAUD—EVIDENCE OF GOOD FAITH OF GRANTEE.—The burden of proof usually rests upon the person asserting fraud, but when one bases a claim upon a contract obtained from a person to whom he stands in a relation of trust and confidence, it becomes his task to prove that he exhibited that utmost good faith which removes all doubt respecting the fairness of the contract. This rule applies not only to those who bear a formal relation of trust to those with whom they deal, but in every case where there has been a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding.

ID.—GRANTOR MUST HAVE INDEPENDENT ADVICE—KNOWLEDGE OF RESULTS OF ACT.—In every such transaction, one who holds such confidential relation will be presumed to have taken undue advantage of the trusting friend, unless it shall appear that such person had independent advice, and acted not only of his own volition, but with full comprehension of the results of his action.

ID.—PRESUMPTION OF FRAUD—FINDING BASED ON—CONFLICT OF EVIDENCE.—The presumption arising from the confidential relations of the parties to a purported conveyance might of itself, and in spite of evidence of the grantee tending to show the contrary, be sufficient to justify the court's findings of fraud on the part of the grantee.

ID.—DEED AS ATTEMPTED TESTAMENTARY DISPOSITION—INTENT NOT TO PASS PRESENT TITLE.—The evidence further justifies the finding that both of the parties to the deed in question regarded it not as a transfer of present title but as an attempted testamentary disposition of the land.

ID.—INTENT NOT TO PASS TITLE UNTIL DEATH OF GRANTOR.—An instrument in form a quitclaim deed, which is handed to the grantee with no intent to pass title to the property until the death of the grantor, is ineffective.

Id.—Statute of Limitations—Fraud Set Up as Defense.—While
it is true that a cause of action for relief on the ground of fraud
or mistake must be commenced within three years from the time
of the discovery of such fraud or mistake, the rule does not apply
to mere defenses.

Id.—Quieting Title—Attack by Defendant on Plaintiff's Deed
for Fraud—Affirmative Relief of Cancellation.—A defendant
in an action to quiet title who is and has been in the possession of
the property, as the sole heir of a defrauded grantor, may attack
the deed under which the plaintiff claims, on the ground of the
fraud, notwithstanding the expiration of more than three years
since the discovery of the fraud, and if successful in such attack,
the plaintiff may not complain of the affirmative relief of cancel-
lation of the deed awarded the defendant on his cross-complaint.

Id.—Action for Cancellation by Heir of Defrauded Grantor—Run-
ning of Statute.—The right of action of such heir for the cancel-
lation of the fraudulent deed has for its very essence the fact
that it is a cloud upon his title. The fraud is a mere incident
of his cause of action, and the running of the statute of limitations
does not antedate his title.

Id.—Heir may Maintain Action Without Administration.—The heir
of a defrauded grantor may, without administration had on the
grantor's estate, maintain an action to disaffirm the deed.

APPEAL from a judgment of the Superior Court of Sac-
ramento County, and from an order refusing a new trial.
John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Devlin & Devlin, for Appellant.

C. E. McLaughlin, for Respondent.

MELVIN, J.—Plaintiff sued to quiet title to certain prop-
erty in Nevada County. Defendant filed an answer and a
cross-complaint and the latter was answered by plaintiff as
cross-defendant. A trial was had upon the issues joined, the
cause having been transferred for convenience of witnesses
to Sacramento County. Judgment was given in favor of the
defendant and cross-complainant. Plaintiff appeals from the
judgment, and from an order denying his motion for a new
trial.

The plaintiff's alleged title was based upon an instrument
which was in form a deed. This writing was dated March 5,

1906, and purported to be a conveyance by Annie E. Carpenter of the real property here in controversy. Both by his answer and his cross-complaint defendant attacked this deed, upon the ground of plaintiff's fraud. Undue influence exercised by the grantee, Cox, over the grantor, Annie E. Carpenter, her inability because of her confidence and trust in the plaintiff and by reason also of her inordinate use of intoxicants to understand the nature of the instrument, and the forgery of the alleged deed were averred in the answer and in the cross-complaint. The court found against the alleged forgery and also against the averment that the grantor was a woman of intemperate habits. It was found that William Carpenter died testate in Sacramento County on February 20, 1906; that his sole heir was Annie E. Carpenter; that upon the death of her father she became the owner of the real property described in the complaint; that J. P. Cox then was and for many years had been the trusted personal friend and confidential adviser of Miss Carpenter and exercised influence and control over her and her acts; that he petitioned for and upon her nomination obtained letters as the administrator of William Carpenter's estate although Annie E. Carpenter was named as executrix in the will; that he prepared, presented to her, and caused her to sign and acknowledge the deed upon which he rests his claim to the property here in litigation; that she handed the deed to plaintiff; that at that time he exercised undue influence over her and her acts; that "when Annie E. Carpenter placed said deed drawn by plaintiff on March 5th, 1906, in the hands of plaintiff, she did so with the understanding and belief that the title to the property described in the complaint would not pass until said deed was recorded, and that said deed would not be recorded until after her death; and at said time and in placing said deed in the hands of the plaintiff, Annie E. Carpenter understood and believed that she could recall said deed, and that she at all times retained control of said deed; that plaintiff assented to and acquiesced in the said understanding and belief so entertained by Annie E. Carpenter; that at said time when Annie E. Carpenter signed said deed and placed the same in the hands of the plaintiff she did so in contemplation of death with the understanding, intention and belief that the said deed was not to take effect and would not take effect until after her death and that she

could recall said deed at any time.'' It was found also that at no time was Miss Carpenter advised concerning the nature and effect of the deed, and that she received no independent advice in relation to it. The court also found that there had been no execution of the instrument with intent to convey nor delivery with such intent. The court also found that the causes of action set forth in the cross-complaint were not barred by the statute of limitations. There was also a finding to the effect that during the life of Annie E. Carpenter, J. P. Cox always acknowledged her title to the property. On the first day of April, 1906, Annie E. Carpenter and the defendant, Edward Schnerr, intermarried. She died in October, 1908, and he as her sole heir-at-law succeeded to her interest in the land.

In his answer to the cross-complaint the plaintiff and cross-defendant set forth the deed from Miss Carpenter to himself as grantee *in haec verba,* and it is now the contention of his counsel that by failure to file an affidavit as required by section 448 of the Code of Civil Procedure, the execution and delivery of the deed were admitted by the cross-complainant. In support of this position *Sloan* v. *Diggins,* 49 Cal. 40; *Rosenthal* v. *Merced Bank,* 110 Cal. 200, [42 Pac. 640]; *Knight* v. *Whitmore,* 125 Cal. 200, [57 Pac. 891], and *Carpenter* v. *Shinners,* 108 Cal. 362, [41 Pac. 473], are cited. There is no merit in appellant's point, and the cited authorities do not support his claim. The main purpose of the answer and the cross-complaint was to discredit the deed upon which rested plaintiff's claim of title. These pleadings were verified, and although the deed was not fully set out in either of them, it was amply identified as the instrument which, according to the allegations of these pleadings, was void because of the fraudulent conduct of the plaintiff in procuring it. In both the defendant's answer and the cross-complaint the deed was identified by the recitals of the names of the parties thereto, its date, and the volume and page of its recordation. In the verified pleadings the due execution and delivery of this document were stoutly denied. It would have been a vain and useless exaction, therefore, to have required further denial of the effect of this writing by defendant and cross-complainant merely because a copy of the instrument had been set out in the answer to the cross-complaint.

Appellant's statement that the production of the deed by the grantee named therein is *prima facie* evidence of delivery is a correct one; but, in this case the *prima facie* presumption is overcome by abundant evidence.

Appellant's counsel call attention to the fact that the deed of March 5, 1906, was, as found by the court, signed by Miss Carpenter and placed in the hands of plaintiff. These facts, they say, establish execution and delivery as there can be no conditional delivery of such an instrument to the grantee himself. (Civ. Code, sec. 1056; Devlin on Deeds, 3d ed., sec. 314.) But the question of conditional delivery is not in this case. The very basis of defendant's case is the fraud of the plaintiff in procuring the deed. If it were fraudulently obtained the mere manual tradition of it could not be in legal sense a delivery. Execution and delivery of such an instrument depend upon more than the mechanical acts of signing it and passing it to another person. Apparent consent is not real or free when obtained through fraud, undue influence, or mistake. Free consent is an indispensable element in the making of a valid contract.

The testimony of the plaintiff himself was to the effect that shortly after Mr. Carpenter's death he went to the ranch where Miss Carpenter was living. He fixed the date as March 5, 1906, because of the death of one of his friends and a mission which he undertook on account thereof. Miss Carpenter rode into Folsom with him, and during the journey a conversation between them took place. After referring to the sudden deaths .of her father, mother, and brother, Miss Carpenter, according to plaintiff, said she wanted to arrange her business affairs. He testified with reference to this conversation in part as follows: "I asked her how she wanted to fix it; she said 'by deed'; I says 'I don't mean that, Annie, I mean how do you wish to dispose of it'; 'well,' she said, 'I don't care anything about most of my relations,' she says 'the Long family, ma's brother's family, we haven't been friends for a great many years,' she says 'we haven't spoken to probably for twenty years,' she says 'pa has got a couple of brothers in the East, I never met but one of them, he was out on the ranch a while, but we did not like him, ma made him get off it,' she says 'you have been as kind to me as a brother, I am going to give you some land'; I says 'you are— what are you going to give me, the McNamee Ranch?' She

says 'No, there is a mortgage on that'; I says 'you know that had been in our family once for about twenty years'; she says 'I won't do anything about that, because I am going to give you Twin Valleys,' she says, 'pa often said he would like to see you have some land in the mountains, and the rest of the property I am going to give Hughey and his brother, on my side of the family, ma's sister's children.'

"By Hughey and his brother she referred to the McGuire boys." After their arrival at Folsom, according to Cox, they discovered Mr. Carpenter's will in an old wallet which had been previously taken to Cox's office. At Miss Carpenter's request (as Cox testified) he prepared the deeds of certain property to the McGuires, and also the one in which his name appeared as grantee. He then called in Leonard, a justice of the peace, who took her acknowledgments. Cox's account of the occurrences when Leonard came into the room was as follows: "I said, 'Annie wants you to take her signature or acknowledgment,' when he came in the office: Annie said 'Yes, Johnnie, I am deeding the Twin Valleys to Jay, and the rest of the property to Hughey and his brother.' " The deeds were then put into two envelopes, the McGuire deeds in one and the deed to Cox in the other. These were held for a few moments by Miss Carpenter, according to Cox's account, and then she said: " 'Well, I will give you these deeds now, Jay, you understand you are not to record them until after my death, I want the use of this property while I live.' " To which he replied "Certainly that is understood." Upon cross-examination Cox repeated the narrative of the transaction with a fidelity to detail which argued either an excellent memory or a committed story. The justice of the peace corroborated the plaintiff with reference to Miss Carpenter's remark to him when he was about to take her acknowledgment to the deed. His version of the passing of the deeds, and the conversation at that time, corresponded exactly with the plaintiff's.

Alene Hamlin called by plaintiff testified that Mrs. Schnerr in the presence of the latter's husband, and Mrs. Burns, told witness about deeds which she had made in favor of Cox and the McGuire boys.

Emma P. Wells testified to a similar conversation with Miss Carpenter a week or two after her father's death, as did Albert D. Scott, who went to work on the Carpenter ranch shortly

after Mr. Carpenter's death. Appellant's counsel insist that the oral evidence of the plaintiff, and the other witnesses called in his behalf, conclusively establishes the execution and delivery of the deed.

The finding that plaintiff was the trusted friend and confidential adviser of Miss Carpenter at the time the deed was drafted and signed is supported by the evidence. It is true that proof of mere friendship is not sufficient to establish the sort of confidential relation which forces the donee of a valuable property to treat with his donor in such a way as to preclude all possibility of undue influence. But in this case plaintiff himself furnished proof of the utmost trust and confidence reposed in him by Miss Carpenter. He was the first adviser summoned and consulted after her father's death. To him had been intrusted all of Mr. Carpenter's papers, and she had instructed him to employ learned counsel to assist him in taking charge of the administration of her father's estate. She called him her "best friend." Long prior to the death of her father, and her brother William, she had consulted Cox, and he had drawn for her deeds of her property in favor of her brother to be delivered in case she should die before William Carpenter, Jr. These and many other circumstances, which we need not detail, showed the existence of unbounded trust, which made it incumbent upon plaintiff to use the utmost good faith in dealing with her. The court was fully justified, in view of the evidence, in holding that his course, under the circumstances, was eloquent of fraud. The burden of proof usually rests upon the person asserting fraud, but when one bases a claim upon a contract obtained from a person to whom he stands in a relation of trust and confidence, it becomes his task to prove that he exhibited that *uberrima fides* which removes all doubt respecting the fairness of the contract. And this rule does not apply merely to those who bear a formal relation of trust to those with whom they deal —not only to attorneys, physicians, trustees, clergymen, kinsmen, and others who by the very force of their occupations or relationship are presumed to be in the class of persons bound to act with the utmost good faith. It applies in every case "where there has been a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding." (2 Jones on Evidence, ed. of 1913, sec. 190.)

In every transaction of this kind, one who holds such con-

fidential relation will be presumed to have taken undue advantage of the trusting friend, unless it shall appear that such person had independent advice and acted not only of his own volition but with full comprehension of the results of his action. (*Ross* v. *Conway*, 92 Cal. 632–635, [28 Pac. 785]; *Darlington's Estate*, 147 Pa. St. 624–631, [30 Am. St. Rep. 776, 23 Atl. 1046]; *Firebaugh* v. *Burbank*, 121 Cal. 186–191, [53 Pac. 560]; *Piercy* v. *Piercy*, 18 Cal. App. 751–756, [124 Pac. 561]; *Odell* v. *Moss*, 130 Cal. 352–357, [62 Pac. 555].) In view of this rule it cannot be held merely because defendant could not contradict plaintiff's account of the transaction between himself and Miss Carpenter, which, he says, terminated in the execution and delivery of the deeds, and could not refute the statements of the other witnesses regarding the declarations of the alleged grantor with reference to the disposition of her property to plaintiff and to her cousins, that, therefore, no proof of fraud was made. The presumption arising from the confidential relations of the parties to the purported conveyance might of itself, and in spite of the evidence offered by plaintiff, be sufficient to justify the court's findings of fraud. There may have been in the manner of the witnesses, or the circumstances attending the giving of their testimony, that which justified the court in disregarding it. It is within the province of the trial court to determine what weight and credit shall be given to the testimony of any witness, and this court may not control the conclusion or finding of the superior court denying credence to the testimony unless it appears that there is nothing which at all impairs its accuracy. (*Blanc* v. *Connor*, 167 Cal. 719–722, [141 Pac. 217]; *Davis* v. *Judson*, 159 Cal. 121–128, [113 Pac. 147].) The testimony of all witnesses except the plaintiff and the justice of the peace who took the acknowledgment, was entirely of alleged declarations of plaintiff's grantor who had died before the witnesses testified. Such evidence has been characterized by this court as the weakest kind that may be produced. (*Mattingly* v. *Pennie*, 105 Cal. 514–523, [45 Am. St. Rep. 87, 39 Pac. 200]; *Austin* v. *Wilcoxson*, 149 Cal. 24–29, [84 Pac. 417].) Perhaps the court gave it slight weight, or none at all, and probably the testimony of the plaintiff was disregarded because of his solemn declaration under oath, given at a hearing in the probate court, that no such writing as the deed upon which he now relies was ever executed by

Miss Carpenter. It appears without contradiction that the heir contested the final account of Cox as administrator of the estate of William Carpenter, deceased. He had asked for distribution of the entire estate to Mrs. Schnerr (nee Carpenter). In the course of the hearing upon the contest Cox was given a very searching examination regarding the papers which he had submitted to the lady from time to time for her signature. Cox was asked the following questions and gave the answers indicated:

"Q. You have asked for distribution here of this entire estate to Mrs. Schnerr. Do you know of any transfer or conveyance she has made of her property?

"A. I do not know it is transferred, only it is of record. I know some papers I prepared for her, not associated in the estate at all.

"Q. It relates to her interest in the estate?

"A. It pertains to her land interest.

"Q. What is that paper?

"A. A paper from Mrs. Schnerr to Mr. Schnerr.

"Q. Anything else?

"A. No."

All through the hearing Cox protested that the only papers Mrs. Schnerr had signed were those relating to the conduct of the affairs of the estate. This is so utterly at variance with his testimony in the case at bar, that the chancellor was justified in casting out any part or all of the later version of the transaction which gave rise to the deeds.

But laying aside the question of fraud, there was abundant evidence to justify the court's conclusion that both the plaintiff and Miss Carpenter regarded the so-called deed, not as a transfer of present title, but an attempted testamentary disposition of the land. The plaintiff testified that on April 17, 1906, he had a conversation with Mrs. Schnerr at her house. She said: "Jay, I have got a husband now and I want to change those McGuire deeds in favor of Ed." (Mr. Schnerr, defendant in this action.) He gave her the deeds and never saw them again. These deeds, naming her cousins as grantees, were given to him, according to his testimony, under exactly the same circumstances as those attending the tradition of the deed here in dispute, yet he seems to have surrendered them without question of her right thus summarily to recall them. All of the deeds were made, as he said, at a time

immediately following her statement about the sudden deaths of the members of her family, and with the distinct understanding that they were not to be recorded until after her death. There was no trust clause in the deed upon which he bases his claim, and therefore such cases as *Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570, [140 Pac. 242], cited by appellant cannot apply. The deed involved in the Tennant case reserved the power to revoke the grant or to sell the property. In this case the instrument was in form a quit-claim deed reciting as consideration "Ten Dollars (and other valued consideration)." It either conveyed her interest immediately and fully or not at all. The conduct of both parties to this deed when dealing with the McGuire deeds indicates very strongly that there was no intent to pass title to any of the property until the death of the grantor, and as the writings were not testamentary in form they could not and did not take effect. Cox's intent to take an interest only after death was further shown by his denial under oath that any such deed existed, by his dealing with the land as administrator, treating it as the property of the estate and leasing it for a long term to one Mills. In *Kenny* v. *Parks,* 137 Cal. 527, [70 Pac. 556], the court was considering a state of facts somewhat similar to those existing here. Plaintiff in that case had signed two deeds purporting to convey certain land to her husband. Both husband and wife believed the deeds would be of no validity until recorded, and upon the promise of the former that he would not record them unless he should survive her, the wife placed them in his possession. It was held that there was no delivery, the court saying, in part (137 Cal. 531, [70 Pac. at page 557]) : "To constitute delivery of a deed, it is not sufficient that there be a mere delivery of its possession, but this act must be accompanied with the intent that the deed shall become operative as such. (2 Boone on Real Property, sec. 295a; *Black* v. *Sharkey,* 104 Cal. 281, [37 Pac. 939] ; *Denis* v. *Velati,* 96 Cal. 227, [31 Pac. 1] ; *Harris* v. *Harris,* 59 Cal. 622.) Here both parties understood that the deed could have no effect until recorded; and there was therefore no intent that it should become immediately operative, or that it should ever become operative during the life of the grantor, or afterwards, unless the grantee should survive her." (See, also, *Follmer* v. *Rohrer,* 158 Cal. 758, [112 Pac. 544] ; *Bias* v. *Reed,* 169 Cal. 33, 45, [145 Pac.

516].) It follows that the findings based upon failure of delivery in view of the belief that the deeds were testamentary must be upheld.

Plaintiff testified that at the time Mrs. Schnerr took back the McGuire deeds he said to her: "You ought to tell your husband about my deed, Annie." To which, after declaring that her husband had nothing to do with the property which she inherited from her father, and commenting upon Mr. Schnerr's wish to take the administration of the Carpenter estate from Cox, she responded: "I want you to keep the deed and go right along with my business as though I was not married." This conversation and the alleged statements of Mrs. Schnerr regarding the deed which other witnesses related are deemed by appellant to be ample proof of the laches of Mrs. Schnerr, who, as his counsel say, knew all about the deed and its provisions, yet took no steps to have it declared void. But we may not pass upon the weight of this evidence, nor question the power of the court to find that the alleged grantor never acquiesced in, nor affirmed the deed, nor admitted directly or indirectly that plaintiff had any interest in the property. Under the circumstances which we have discussed heretofore, the court trying the issues may have disregarded this testimony entirely, depending upon the presumption of fraud and plaintiff's statements under oath in the probate proceeding when Mrs. Schnerr was present, rather than his later version of his transactions with her touching this property.

Appellant apparently places great faith in subdivision 4 of section 338 of the Code of Civil Procedure as a bar to the cause of action pleaded in the cross-complaint, and also to the defense to his main cause of action. While it is true that a cause of action for relief on the ground of fraud or mistake must be commenced within three years from the time of the discovery of such fraud or mistake, the rule does not apply to mere defenses. It is to be remembered that this is an action to quiet title commenced by Cox, who depends upon his purported deed. By way of defense Mr. Schnerr pleads plaintiff's fraud in obtaining said deed. While it is true that the original answer was not filed until more than three years after the date of the deed, the allegations of fraud in said answer are not restricted by the statute of limitations invoked by plaintiff. In *Hart* v. *Church,* 126 Cal. 471, 479, [77 Am.

St. Rep. 195, 58 Pac. 913], this same statute was under consideration and Mr. Justice Henshaw, delivering the opinion of this department, said: "It is true, as appellant contends, that where a party seeks a rescission of a contract, he must act with promptness, and that the question as to what is or is not a prompt effort to rescind must depend in each case upon its own peculiar facts. It is also true that where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake, but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three years' statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud." In *Murphy* v. *Crowley,* 140 Cal. 141–143, [73 Pac. 820], the action was one in equity seeking manifold relief, including the setting aside of a deed. The court held that it was an action for the recovery of real property, or possession thereof, within the meaning of section 318 of the Code of Civil Procedure, and that subdivision 4 of section 338 of the Code of Civil Procedure did not apply. Appellant concedes the existence of the rule announced by these cases and by such authorities as *Goodnow* v. *Parker,* 112 Cal. 437, [44 Pac. 738]; *South Tule Independent Ditch Co.* v. *King,* 144 Cal. 450–455, [77 Pac. 1032]; *Page* v. *Garver,* 146 Cal. 577–579, [80 Pac. 860], and numerous others cited by respondent, but insists that inasmuch as defendant is and has been in possession of the property the only question involved is not recovery or possession thereof, but is plaintiff's alleged fraud in the procurement of the deed; and that therefore section 318 of the Code of Civil Procedure has no application. But the plaintiff himself had put the matter of possession or right to possession in issue by bringing this action, and even if it be conceded that defendant might not have brought an original action to cancel the deed, nevertheless he may defend upon the theory that fraud vitiates plaintiff's alleged cause of ac-

tion. (*McColgan* v. *Muirland,* 2 Cal. App. 6–11, [82 Pac. 1113].)

Since the defense based upon plaintiff's fraud was effective, it makes no difference to plaintiff what affirmative relief was granted defendant on his cross-complaint, and plaintiff may not properly complain even if he were correct in his theory that the relief prayed for in the cross-complaint is barred by the statute of limitations. But it was not so cut off by the statute. The interest of Schnerr, the cross-complainant, arose upon the death of his wife. His pleading by way of cross-complaint has for its very essence the fact that the fraudulent deed is a cloud upon his title and the relief prayed for is the removal of the cloud. Of course, the question of fraud is incidental, but the gravamen of the cross-complaint is that Schnerr, as owner of the land, may be injured by the deed if it be not canceled. Fraud is merely a feature of the case, and the running of the statute of limitations does not antedate plaintiff's title. In other words, the case is within the doctrine of those discussed by Mr. Justice Lorigan in *Scholle* v. *Finnell,* 166 Cal. 546–550 et seq., [137 Pac. 241].

Appellant denies defendant's right to disaffirm the deed. He says that there being no proof of probate proceedings, or of the appointment of an administrator or executrix, there is no showing of the heir's right to disaffirm. A similar contention was made in *Page* v. *Garver,* 146 Cal. 577, [80 Pac. 860], but was overruled by the court on the authority of *Murphy* v. *Crowley,* 140 Cal. 141, [73 Pac. 820], and other cases cited on page 579 of the 146th volume of the California Reports, [80 Pac. 861]. (See, also, *Ross* v. *Conway,* 92 Cal. 632, [28 Pac. 785].)

No other features of the case are sufficiently important to require discussion.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.