[Civ. No. 8898. Third Dist. Nov. 7, 1956.]

RUTH W. LYON, Respondent, v. RALPH M. LYON, Appellant.

Francis H. Frisch for Appellant.

John E. Anderton for Respondent.

VAN DYKE, P. J.—At the end of five years of marriage, Ruth W. Lyon, plaintiff and respondent in this appeal, brought three actions against her husband, Ralph M. Lyon, appellant herein. The three actions were consolidated for trial. One was an action for divorce which terminated in Ruth's favor, and Ralph has taken no appeal. Another was to quiet title to personal property, and this action also terminated in Ruth's favor; again Ralph has not appealed. The third action involved the title to certain real property on which defendant American Trust Company held a lien. The judgment in this action determined that Ruth was the owner of the property and that Ralph had no interest therein; Ralph has appealed. The judgment preserved the lien rights of American Trust Company. Herein, therefore, we are concerned only with the attacks made by Ralph upon the judgment as to the ownership of the real property.

The original complaint was entitled as a complaint to partition real property. The status of Ruth and Ralph as husband and wife was alleged, and it was alleged further that the two were the record owners in joint tenancy of the subject property; that the property had been purchased by Ruth prior to the marriage and that she had paid the entire purchase price therefor from her separate funds; that about two years after the marriage she caused the property to be conveyed to herself and Ralph in joint tenancy; and that the conveyance was made as a matter of convenience and to facilitate

passage of title to said real property in case of the death of either plaintiff or said defendant Ralph M. Lyon. It was further alleged that after she bought the property Ruth, with the knowledge and consent of Ralph, had paid from her separate estate various sums of money in the improvement and betterment of the property and in the discharge of taxes levied against it; that no community funds of the two had been expended either for the purchase of the property or the improvement or betterment of it and that Ralph had never contributed anything to cost, maintenance, or improvement from his separate funds. Ruth prayed that the respective interests of the parties in the property be ascertained and determined, that partition be had according to such interests or that the property be sold and the proceeds so divided. Ralph answered, admitting that Ruth had paid the original purchase price from her separate funds, but raised issues as to the source and nature of the funds that had been expended upon the property, alleging affirmatively that community funds of the parties had been so expended. He, too, prayed that the respective interests of the parties in the property be ascertained, and that it be partitioned or sold.

Appellant first contends that the trial court erred in admitting evidence of fraud on the part of Ralph in procuring the joint tenancy deed. The following occurred: At the beginning of the trial Ruth's counsel made a statement to the court concerning the issues and the evidence he proposed to adduce. He said he expected to prove that when the parties were married Ralph had nothing and that he had earned nothing during the marriage; that he had been guilty of continuous fraudulent conduct for the purpose of obtaining money from Ruth; that he obtained over $30,000 in cash; that all the money which purchased, improved and maintained the property came from Ruth's separate estate; that Ralph took fraudulent advantage of her in violation of his fiduciary duties and thereby obtained conveyance of the property in joint tenancy. Ruth's counsel stated that he further expected to show that, even assuming the validity of the joint tenancy transaction, Ruth would be entitled to have set off against Ralph's interest the amounts she had expended in the maintenance and improvement of the property; that Ralph had contributed nothing and had placed the entire burden for maintenance and improvement upon Ruth. Ralph's counsel asserted that the parties were bound by the existing pleadings and could not go outside of them; that there was no allegation

of fraud or misconduct on the part of Ralph, and he was not prepared at that time to meet any such issue. He stated that as the pleadings then stood the only attack made upon the conveyance rested in the allegation that the conveyance had been made as a matter of convenience and to facilitate passage of title to the property in the case of the death of one of the parties. The trial court suggested that Ruth's pleadings could be amended to conform to proof, and thereafter, over the objection of counsel for Ralph, permitted testimony addressed to the claimed fraudulent conduct of Ralph in obtaining the execution of the joint tenancy deed. At the conclusion of the evidence the court granted permission to Ruth's counsel to amend the complaint to conform to the proof that had been made, and the complaint was so amended. By its decree the court adjudged that the interest of Ralph under the deed had been fraudulently procured, that the deed was invalid because of such fraud and that Ruth was the sole owner of the property. The trial court further found that at the time the joint tenancy was created, Ruth had not been aware of the legal effect of the documents through which it was created, did not know that Ralph could thereby claim a present vested interest in the property and at no time had intended to convey to him such present vested interest.

There is, of course, a wide difference between proving a deed invalid for fraud in its procurement and invalidating a deed for want of delivery, or for want of intent to convey any estate, or the estate which it purports to convey. The distinction is pointed out in *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509].

There was no pleading of fraud in the original complaint. The objection of Ralph's counsel to the introduction of evidence of fraud ought to have been sustained, and counsel for Ruth should have been compelled to amend his pleadings to allege fraud or be confined to the issues presented by the pleading under which he brought the case to trial. To proceed as the court did was error. But it appears that the court from the beginning took the position, and so advised counsel for appellant, that he would consider granting a right to amend at the close of respondent's evidence. When that point was in fact reached respondent's counsel announced that plaintiff was resting her case subject to his "reserved right" to amend to conform to the proof that had been introduced. At the close of evidence leave to so amend was asked and granted. This was all irregular, but it does not appear

that appellant suffered harm from this mode of proceeding. No continuance was requested in order to prepare to meet the attack on the ground of fraud, or to set up special defenses thereto, and it does not appear that the case was not. as fully tried upon that issue as the parties deemed necessary. We hold that such error as inhered in the mode of procedure would not justify reversal and further trial. Section 469 of the Code of Civil Procedure provides:

"No variance between the allegation in the pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (See *Lyles* v. *Perrin,* 134 Cal. 417 [66 P. 472] ; *Consolidated Pipe Co.* v. *Wolski,* 211 Cal. 563 [296 P. 277].)

Appellant contends further that the trial court erred in permitting the plaintiff to file an amended complaint alleging fraud. What has been said disposes of this contention also. ■ And as said in *Vallera* v. *Vallera,* 64 Cal.App.2d 266, 272 [148 P.2d 694] :

"In the final analysis, the aims and objects of a trial are and should be to get at the truth. While formal requirements of pleading and practice cannot be dispensed with by the court, it can usually make such orders or grant such amendments as the case progresses as will tend to justly dispose of the issues presented upon their merits. Form is subordinated to substance in pleading and practice in civil cases. In passing upon the construction, or permitting the filing of amended pleadings, the court is justified in adopting a liberal attitude to the end that substantial justice may be attained upon the merits of the controversy."

Finally, appellant contends that the proof was insufficient to sustain the finding of fraud. ■ The situation presented by the record is covered by the rule well stated in *Smith* v. *Lombard,* 201 Cal. 518, 524 [258 P. 55], as follows:

"It is the rule that in transactions between husband and wife whereby the former gains an advantage the presumption of undue influence arises (Civ. Code, § 2235), but the presumption is disputable and may be overcome by proof of a full and fair disclosure of all that the wife should know for her benefit and protection concerning the nature and effect of the transaction. (*Estate of Cover,* 188 Cal. 133 [204 P. 583].)

"The ultimate fact to be determined in this class of cases is whether the act was induced by such influence, the fact

being taken for granted prima facie where it appears that the husband gained an advantage by means of the transaction." (See also *Combs* v. *Combs,* 75 Cal.App.2d 903 [171 P.2d 949].)

It appears clearly from the record that the joint tenancy deed was executed without valuable consideration, and therefore the presumption arose that the deed was the result of undue influence and the burden was cast upon appellant to prove otherwise. (*Combs* v. *Combs, supra.*) That husband and wife in fact stood in confidential relationship to each other appears from the testimony of both. Admittedly, and beginning shortly before the marriage, Ruth transferred from time to time substantial sums to Ralph, who said that he expended the sums for their living expenses. But the sums are so large that the trial court could conclude his expenditure thereof could not be accounted for on that theory. It appears that she was deeply enamored of him and for years sold securities owned by her and turned the proceeds over to him with unquestioning confidence that he would protect her interests. It appears also that he stimulated the flow of largess by telling her that she must advance money to him. It appeared he had failed in business before the marriage, and efforts were being made to collect by out-of-state creditors. When she remonstrated as to the amount of money she was giving him he replied to her, "We are in this thing up to our necks." He told her that in order to save anything he had to have help to get out of trouble; that he owed a great deal of money, and that if she did not help him she would lose everything; that everything she owned would be taken away from her and she would have to go bankrupt; that he had nothing to lose, but that she would lose everything; that all her property would have to go to satisfy creditors. It appears that she was untrained in business. Finally, when the break came and the parties separated, Ralph sold many articles of furniture that were in the common residence of the parties and took and sold business fixtures such as a walk-in icebox and various mechanical devices which had been purchased and paid for by her funds for use in the chicken raising business in which he had been engaged. The proceeds he kept. He said he did these things because he had to have something to live on. Concerning the joint tenancy deed itself, the record shows that her understanding of the transaction as testified to by her was that they had gone to an attorney's office to have something drawn up so that if she should die

he would have the place, and that his name would be on the deed so that he could feel that she was not the only one who had anything while he had nothing; that she had never previously executed a deed, and no one explained to her the effect of the deed she executed. She said she had never heard of a joint tenancy deed and learned of it and of its nature for the first time in the summer of 1954 when her attorney explained it to her. When asked what she believed had been accomplished when she signed the document, she said: "What I mean to try to say is that I know in Louisiana my grandmother was given two houses, one in the city and one in the country, by her sons and very much like the same sort of arrangement, I think,—in which the house was not hers actually, neither of the houses were hers but for her lifetime she could live in them." She said she did not know that by executing the deed she was giving Ralph an equal interest with herself in the property, but understood that his name would appear as joint owner with her and thought that if she died he would have a place to live. Of course, we are not here concerned with conflicts in the evidence. The attorney who drew the deed and attended to its execution testified that he explained the effect of the transaction to her. He was unable to repeat with exactness just what he had said to her due to the lapse of time and to the fact that it was a rather routine transaction in his office. The following questions and answers appear in the record:

"Q. What explanation, if any, that you can recall did you make to Mrs. Lyon as to the effect of the execution of these deeds? A. That the execution of these deeds would create a joint tenancy between her and Mr. Lyon.

"Q. You explained that to her, is that correct? A. And that the joint tenancy carried the right of survivorship.

"Q. Did you also explain to her that it conveyed to Mr. Lyon a present one-half interest? A. I can't recall the entire explanation. My notes indicate that it was separately discussed . . .

"Q. Did you discuss this matter with Mrs. Lyon at a time when Mr. Lyon was not present? A. I don't believe so."

Without going further, it is sufficient to say that from this record it was a question for the court to determine as to whether or not there had been the full and fair disclosure to the wife, understood by her, of things that she ought to have known for her benefit and protection concerning the nature and effect of the transaction. It was also a question of fact for

the trial court as to whether or not Ralph had borne the burden of overcoming the presumption of fraud. We hold that the court's findings that the deed had been fraudulently procured and was therefore to be voided is sustained by the record. This being so, it is unnecessary to discuss appellant's contention that there was no evidence of an understanding between these parties that the deed in the form of a joint tenancy deed did not carry out their intentions.

The judgment appealed from is affirmed.

Peek, J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.