[Civ. No. 463. Fourth Appellate District.—June 16, 1931.]

LOUIS PHILIP FORTIER, Respondent, v. MICHAEL HOGAN et al., Appellants.

Stearns, Luce & Forward for Appellants.

Glen H. Munkelt for Respondent.

GRIFFIN, J., *pro tem.*—This is an action by the father for damages for the death of his minor child eight years of age, occasioned by a collision between a delivery automobile

of defendant corporation and the minor child of plaintiff. Said child was riding a scooter at the intersection of Dewey and Harrison Streets in the city of San Diego. The jury rendered a verdict in favor of the plaintiff and respondent in the sum of $9,275. Judgment was entered thereon in the amount of the verdict and costs of action amounting to the total sum of $9,404.30. From this judgment defendants appeal.

A statement of the case discloses the following facts: The son of plaintiff and respondent, Joseph James Fortier, of the age of eight years, five months and eighteen days, was killed on October 25, 1929, at 2:30 o'clock in the afternoon by coming in collision with an automobile delivery truck driven by the defendant Michael Hogan, who was at the time the agent and employee of the Exclusive Florists, Inc., a corporation. Harrison Street was a street running approximately east and west and was 70 feet wide at the intersection. Dewey Street was a street running approximately north and south and was 40 feet in width. The automobile delivery truck driven by defendant Michael Hogan was proceeding easterly on the south side or right-hand side of Harrison Street toward the intersection of Dewey Street. At the northwest corner of Harrison and Dewey Streets was a house, a large palm tree and a low cement wall, partially obstructing the view of the driver of the automobile delivery truck of other traffic proceeding southerly on Dewey Street. At the time of the accident the deceased boy was traveling south on Dewey Street a few feet away from the west curb on the paved portion of the street. He had constructed for himself a small "scooter", being a piece of wood erected upon two skates with a small stand or rest extending upwards, upon which he rested his hands. The grade of Dewey Street is downhill toward Harrison Street. The boy was propelling the scooter with one foot on the scooter and one foot on the pavement, coming down the moderate incline. The driver of the truck was going easterly toward Dewey Street at a speed variously estimated, and upon which there was a contradiction of testimony. There is no direct testimony that the speed was excessive. Respondent relies upon the circumstances disclosed after the accident to establish an unlawful and excessive rate of speed of defendant's delivery car. The driver of the truck testified that

as he approached the intersection he looked first to his left, which would be the direction from which the child was approaching, and then looked to his right and saw an approaching automobile going north on the east side of Dewey Street close to the intersection of Harrison Street. He, the driver, then directed his attention to this car, unable to determine whether it was going to stop and let him pass in front or if it was going to pass in front of him. While he was thus proceeding and his attention thus diverted, his car suddenly collided with the boy, who was proceeding south on Dewey Street about 4 feet east of the west crosswalk of the intersection. The point of impact was a point in the intersection just south of the center line of Harrison Street and west of the center line of Dewey Street about 4 feet east of the west crosswalk of this intersection. The testimony of the witnesses differs as to the actions and conduct of the boy after he arrived at the north crosswalk and their testimony will be hereafter more fully considered. The boy collided with the left front fender of the truck. As the truck proceeded, the rear wheel ran over the child and his death occurred. The boy's sweater was found about 7 feet east of the prolongation of the west curb line of Dewey Street. The scooter was found 24 feet east of this line. There was a continuous skid mark of the right rear wheel of the truck extending from the spot where the scooter was found to a point 33 feet east, and of the left wheel, a skid mark of about 28 feet. The distance from the scooter to the truck when it stopped was 49 feet. The truck stopped about 71 feet from the point of impact. The deceased was a colored boy and was one of eight children of plaintiff, of more than average intelligence for his age, about 4 feet high, weighed about 88 pounds, his record in school was good, he was industrious and of an affectionate and lovable nature, helped his brother sell Sunday papers and a church magazine, he earned $6 a month, saved his money and bought himself clothes.

The defendants and appellants specify the following as errors relied upon to justify a reversal of the judgment: 1. That the evidence is not sufficient to support the verdict and judgment for the following reasons: (a) That the uncontradicted evidence establishes that the deceased was guilty of negligence which proximately contributed to his injuries, (b) that at the time of the accident the deceased boy did not

use ordinary care or caution, such as a boy eight years of age would be reasonably expected to use under the same facts and circumstances, (c) that the deceased was guilty of contributory negligence which was the proximate cause of his injuries, in that he did not use ordinary care and caution to avoid the accident and for his own protection, (d) that the evidence does not establish that the defendant was guilty of any negligence that was the proximate cause of the accident and injuries to the deceased; 2. that the damages are excessive and not supported by the evidence; 3. that the trial court erred in not granting defendants' motion for nonsuit and for a new trial.

As to the actions and conduct of the minor child, plaintiff's witness testified as follows (from a deposition of defendants' witness offered and read into the evidence by plaintiff before resting his case). Arvilla Olson, who was seated in an approaching car about one-fourth of a block south of the intersection at the time of the collision, testified: "Q. Did you see a green delivery truck belonging to the Exclusive Florists at that intersection at about that time? A. I didn't see it approaching, but I saw it just as it crashed because I was watching the boy. Q. You saw the boy approaching the intersection? A. Yes, I did. . . . Q. And when you first saw him where was he? A. He was coming down sort of an incline on Dewey, about half way up when I saw him. . . . Q. Now, at the time you first saw him, how long did you observe him after you first saw him? A. Until he got hit. Q. Now will you describe for us just exactly what you observed, as far as the boy on the scooter was concerned, from the time you first saw him until he was hit? A. When I first saw him he had both feet on the scooter, coming down, and he was sort of crouched down on the scooter and as he came almost to the intersection he stood up, having one foot on the board and the other off, and pushed his scooter toward the intersection, and I saw him just as he crashed into the front wheel, or the fender, and he was tossed over. Q. Now, did you notice in what direction the boy was looking as he came down Dewey Street? A. As far as I could see he seemed to be watching his scooter. I didn't notice. Q. Did you see what direction his head was turned? A. It was turned straight ahead, or towards the ground, more or less. . . . Q. Did he change the direction of

his head at any time before he was hit? A. I couldn't tell you about that. Q. When he got to the north property line of Harrison Street did he look toward the truck, or west on Harrison, or westerly on Harrison° Street? A. I don't think he did. . . . I don't think that he looked either way. . . . Q. Any time that you could see him, did you see him swerve in any direction? A. No, he came direct. Q. And did he slacken his speed in any degree, as far as you could observe? A. No. If anything, his speed was accelerated. . . . Q. Did you have a clear, unobstructed view of the boy? A. Yes, of the boy, but not of the truck."

On cross-examination this witness testified as follows: "Q. Now, you testified at the preliminary hearing, did you not? . . . A. Yes. Q. I will ask you if you didn't testify in this manner in answer to these questions: . . . 'Q. Now will you describe the accident as you saw it? A. I was watching the boy coming down the hill, and he had just taken his foot off of his scooter and had his foot on the pavement, and he seemed to go uneven from his path?' A. I didn't say that, 'uneven from his path.' Q. Just a minute until I finish the question. 'And I turned around and I didn't look again until I saw the car going over him . . . ' Did you so testify? A. Yes, except I can't remember saying anything about going uneven . . . Q. You could not see whether he glanced to the right or the left with his eyes, could you? A. No, not with his eyes, I watched his head."

The only other eye-witness testifying in behalf of plaintiff was seated on her porch near the corner where the accident happened: "Q. About how fast was he (the boy) coming when you saw him? A. When I saw him he was pretty slow, because he had stopped there . . . just like someone would walk. Q. Did you see him do anything as he approached the intersection of Harrison? A. What attracted my attention—he slowed down and kind of stood there to adjust his hat, and the next thing I saw him pull out and pass my eyesight. . . . Q. Did he stop any appreciable length of time there, or did he just slow down, or what did he do? A. He slowed down, kind of stopped, adjusted his hat and went on out."

Two other eye-witnesses, seated in the car with plaintiff's witness Arvilla Olson, testified for defendant to about the same facts; that they observed him approach and cross the

intersection with his head down but could not say where his eyes were looking or whether or not he may have looked when they were not observing him. The defendant, the driver of the truck, testifying for the plaintiff, stated that he looked as he approached the intersection but did not see the boy until he collided with him in the intersection.

It is upon these facts that appellants would have us declare that the uncontradicted evidence establishes that the deceased was guilty of negligence as a matter of law, which proximately contributed to his injuries. Appellants also contend that by reason of the testimony of eye-witnesses testifying for the plaintiff as to the conduct of the deceased, plaintiff may not invoke or take advantage of the disputable presumption "that a person takes ordinary care of his own concerns", citing subdivision 4 of section 1963 of the Code of Civil Procedure, and that by reason of that fact this presumption disappears and plaintiff may not rely upon it to support his judgment.

In the well-considered case of *Smellie* v. *Southern Pac. Co.*, reported in 212 Cal. 540 [299 Pac. 529], this question was discussed. The point there raised and presented was as to whether or not the presumption "that the deceased exercised due care for his safety" has been overcome and dispelled as a matter of law by the testimony of a witness called to testify for the plaintiff under section 2055, Code of Civil Procedure. ▮▮▮ That a presumption is evidence and may in certain cases outweigh positive evidence adduced against it has long been the settled law of this state. (*People* v. *Milner*, 122 Cal. 171 [54 Pac. 833] ; *Sarraille* v. *Calmon*, 142 Cal. 651 [76 Pac. 497] ; *Pacific Portland Cement Co.* v. *Reinecke*, 30 Cal. App. 501 [158 Pac. 1041].) ▮▮▮ The general rule that. as against a proved fact or a fact admitted, a disputable presumpton has no weight, is subject to an exception that where an endeavor is made to establish a fact contrary to the presumption, the fact in dispute still remains to be determined upon a consideration of all the evidence, including the presumption. (*Smellie* v. *Southern Pac. Co.*, supra. In *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269], the court has again said: "There seems to be some confusion in the decisions of this state with respect to the extent to which, under various circumstances, presumptions of law are to be regarded as evidence of facts. The code expressly de-

clares them to be evidence (Code Civ. Proc., secs. 1957, 1963), and admonishes the trial judge to instruct the jury upon all proper occasions 'that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a . . . presumption.' (Code Civ. Proc., sec. 2061, subd. 2.) ''

In the Mar Shee case, *supra,* it was held, with approval in the case of *Smellie* v. *Southern Pac. Co., supra,* that a fact is proved against a party relying on the presumption "by the uncontradicted testimony of the party himself, or of his witnesses, under circumstances which afford no indication that the testimony was the product of mistake or inadvertence, and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case". ▮ This presumption does disappear when contradicted or controverted by the evidence of the party relying upon it, with the qualification stated in the Mar Shee case, but it is not correct to say that under the code section, and the effect given to it by the court, it vanishes. from the case as a matter of law, when contradicted or controverted by the party against whom it is invoked.

The question then presented in this case is whether or not the presumption of law "that the deceased person did take ordinary care of his own concerns", was dispelled by the evidence herein enumerated. The fact in dispute was not a question of whether the deceased looked before or while crossing the street, but the question of whether or not he exercised ordinary care of his own concerns. ▮ Conceding, but by no means holding, that the evidence was sufficient to establish the fact to be that he did not look, we are of the opinion, when we take into consideration the fact that the child was only eight years of age and all the other surrounding circumstances, that the evidence, notwithstanding the loss of the benefit of the presumption, would not be sufficient to hold that the deceased was guilty· of contributory negligence as a matter of law.

In the case of *Ryan* v. *Union Pac. Ry. Co.,* 46 Utah, 530, [151 Pac. 71], cited in the case of *Tyson* v. *Burton,* 110 Cal. App. 428 [294 Pac. 750], the Supreme Court of Utah, considering the question of presumptions, held as follows: "In the absence of evidence, there is a presumption that the

deceased used due care and for his protection did all that reasonably was required of him. . . . When, however, facts and circumstances are proven to show just what the deceased did or failed to do, then his care or wantonness is to be determined, not on the presumption, but upon the facts and circumstances proven.''

■ Whether or not the presumption relied upon in the present case was controverted was a question of fact to be determined by the jury. (*Grantham* v. *Ordway*, 40 Cal. App. 758, 761 [182 Pac. 73]; *Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308]; *Moore* v. *Gould*, 151 Cal. 723, 726 [91 Pac. 616].)

■ We cannot say, as a matter of law, at what age a boy would be possessed of such intelligence, foresight and judgment as to charge him with contributory negligence in a case like the present. These matters, and the further question whether a minor duly exercised such judgment as he possessed, must therefore as a rule be left as considerations of facts for the jury's determination, and it would be an exceptional case which would present them as unmixed questions of law for the determination of the court. (*Mayne* v. *S. D. Elec. Ry. Co.*, 179 Cal. 173 [175 Pac 690].)

■ Defendants and appellants claim that the amount of damages awarded is excessive. It is true, in all such cases it is difficult to fix the definite pecuniary loss resulting from the death of a minor child. Precise accuracy in that regard is not capable of being attained, either by a court or jury. Manifestly, there can be no fixed standard by which that loss can be determined. Necessarily the law committed its ascertainment to the discretion and sound judgment of the jury. (*Bach* v. *Swanston*, 105 Cal. App. 72 [286 Pac. 1097].)

■ The evidence of the skid marks for a distance of 33 feet, made by the truck equipped with 4-wheel brakes, and the fact that the truck traveled 71 feet before it stopped, the driver applying the brakes continuously, may be a circumstance showing the amount of care and control exercised by the driver, and sufficient to support a finding that the truck was traveling in excess of the speed limit of 15 miles per hour in the intersection, in violation of law. (*Seperman* v. *Lyon Fireproof Storage Co.*, 97 Cal. App. 654, 657 [275 Pac. 980]; *Warner* v. *Bertholf*, 40 Cal. App. 776

[181 Pac. 808].) These facts, together with the fact of his failure to see the child in the intersection are sufficient, if true, to warrant the finding of negligence. (*Gonzales* v. *Davis*, 197 Cal. 256, 261 [240 Pac 16].) The record contains sufficient evidence to support the judgment in the amount found. (*O'Meara* v. *Haiden*, 204 Cal. 354 [60 A. L. R. 1381, 268 Pac. 334].)

The motions for nonsuit and new trial were properly denied. The judgment appealed from is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1931.