[Civ. No. 15984.   Second Dist., Div. Three.   Apr. 27, 1948.]

N. N. KHOURY, Appellant, v. FRANK F. BARHAM et al., as Executors, etc., Respondents.

Harry G. Mabry, Raymond Tremaine and Jerry Giesler for Appellant.

A. G. Ritter for Respondents.

VALLÉE, J. pro tem.—Appeal by plaintiff from a judgment for defendants in a suit in quasi-specific performance to enforce an alleged oral agreement to devise and bequeath all of the property of Maggie George, deceased, to plaintiff. The executors of the will of Maggie George and the legatees and devisees named therein are the defendants.

The complaint alleges that on November 14, 1942, decedent, Maggie George, made an oral agreement with plaintiff, by which she agreed to bequeath and devise to him by her will all of her property if he would assist her in her business and household affairs, act as her companion and as her physician so long as she lived; that plaintiff so agreed and performed the services until her death on July 1, 1945; that decedent did not bequeath or devise all of her property, appraised at about $155,000, to him, but only $3,000.

In June, 1940, plaintiff, an itinerant physician (Festus, Mo., Oshkosh, St. Louis, Los Angeles, San Bernardino), with little, if any, practice, met the decedent, Maggie George, a wealthy widow, in San Bernardino. Plaintiff was 39, Mrs. George about 59 years of age. Mrs. George lived in Beverly Hills in a large, luxurious home, with a butler, a cook, two maids, a gardener, and a chauffeur. She had had a male companion, named Raya, for more than 10 years prior to this time. For some reason not disclosed, Raya had severed relations and departed. Mrs. George had paid Raya $100 or $150 a month for his services. She learned that plaintiff was not married. After a few preliminary conversations, plaintiff, at the request of Mrs. George, agreed to close his office in San Bernardino and go to her home, reside with her, and act as her chauffeur, companion and physician. Plaintiff testified that in these conversations Mrs. George told him that if he did so and remained with her as long as she lived she would will him all of her property and that he agreed to do so. Mrs. George at that time gave plaintiff $1,000 with which to close his office and pay the expenses he had incurred in opening it some two months before. At that time he knew the approximate extent and value of Mrs. George's holdings.

Plaintiff moved into Mrs. George's home on July 11, 1940. On that day she and plaintiff entered into a written agreement.

The agreement recited that plaintiff represented himself to be a physician and a careful and competent automobile driver; that Mrs. George was a widow, living with her aged mother (Mrs. Saba), alone and in ill health; that she desired to employ plaintiff as a companion, chauffeur, and physician for herself and her mother; and that plaintiff was desirous of entering the employment of Mrs. George for these purposes. By the agreement Mrs. George employed plaintiff for three months to act as chauffeur, companion, physician and medical advisor,—it being understood that Mrs. George retained the right to employ or consult any other physician,—and to render such other personal services as Mrs. George or her mother might designate. Plaintiff accepted the employment and agreed to perform the services in a careful, skillful and respectful manner in consideration of $300 a month, which Mrs. George agreed to pay. Mrs. George agreed to furnish plaintiff, without cost, his board and a bedroom in her residence. The agreement recites that the $1,000 theretofore paid by Mrs. George to the plaintiff was a loan. Plaintiff agreed to repay the same at the rate of $100 per month, without interest. Mrs. George was given an option to renew the agreement for a period of three additional months. She reserved the right to cancel the agreement at any time upon payment of $300 to plaintiff as liquidated damages. The agreement was prepared by Mr. George Breslin, a lawyer of ability, integrity, and of high standing. Plaintiff performed the services agreed to for the three months' period and was paid $300 per month. At the end of three months Mrs. George exercised the option for another three months and paid plaintiff $300 a month during that period.

On December 11, 1940, plaintiff and Mrs. George entered into another written agreement containing substantially the same provisions as the agreement of July 11, 1940. This agreement was prepared by Mr. Breslin and was for a term of 12 months from January 10, 1941. Shortly after the execution of the agreement of December 11th, plaintiff expressed dissatisfaction with respect to the clause therein giving Mrs. George the right to cancel at any time upon payment of $300 liquidated damages. Mrs. George agreed to eliminate that provision. On January 9, 1941, plaintiff and Mrs. George entered into another written agreement, prepared by Mr. Breslin, identical with the agreement of December 11, 1940, except that it eliminated the provision to which plaintiff had objected.

In the summer of 1941, plaintiff left Mrs. George's service, taking his clothing and personal belongings with him, and accepted employment with a physician's service at $300 or $400 per month. Within a few days, at the request of Mrs. George and upon her offer to pay him $5,000 for the balance of the year, he returned to her home. When he returned Mrs. George asked him "for another contract." He told her he would not give her one. Mrs. George did not, at that time, say anything to plaintiff about leaving her property to him. He was paid the $5,000.

In February, 1942, plaintiff again left the George household. On February 10, 1942, plaintiff and Mrs. George executed a release in writing. By this instrument each acknowledged "having received of and from the other payment in full of all considerations, debts or dues owing or claimed to be owing from the other," and each released the other from all obligations of every nature arising out of any verbal or written agreements. The release was prepared by Mr. Breslin. In conversations between plaintiff and Mrs. George and Mr. Breslin, had prior to the preparation of the agreements and the release, and in connection with the signing of them, neither plaintiff nor Mrs. George said anything to Mr. Breslin about any verbal agreement to the effect that Mrs. George would will all of her property to plaintiff. The subject was not mentioned.

A few days after the execution of the release, plaintiff returned to the George household, performing the same services until November, 1942, when he left. Mrs. George communicated with him and he returned to her home. Plaintiff testified that on November 14, 1942, the day he returned to her home, Mrs. George told him that if he would continue with her until she died she would will all of her property to him and that he agreed to do so. No one was present at this conversation other than plaintiff and Mrs. George. This is the oral agreement upon which plaintiff relies for relief.

Plaintiff thereafter remained in the home of Mrs. George until her death on July 1, 1945, except for a brief period when he worked for California shipyards. He performed the same services he had agreed to perform in the written agreements. Mrs. George owned a fleet of trucks which she leased to one of the large metropolitan newspapers. The newspaper used the trucks in making deliveries to newsboys and newsstands. Beginning about July, 1943, and until her death, plaintiff assisted Mrs. George in the operation of the trucking business.

He was paid $400 a month for the first six months of 1942, $5,000 for the last six months of 1942, $500 a month during the first six months of 1943, and $600 per month thereafter until the death of Mrs. George. During the period from July 11, 1940, to July 1, 1945, plaintiff had all of his meals with Mrs. George, all paid for by her, he had his lodging free, she bought him clothes, he accompanied her to bars and restaurants where she paid the bills.

On June 24, 1937, Mrs. George had made a will leaving her property to her mother. On March 17, 1939, she made a codicil giving her trucks to Frank F. Barham. On September 27, 1940, she made a will leaving her property to her mother, without mentioning plaintiff. On February 26, 1943, she made a will leaving a small bequest to charity, the residue to her mother, without mentioning plaintiff. Plaintiff repeatedly importuned Mrs. George to make a will giving him all of her property. On August 27, 1943, she made a will in which she devised her residence property, bequeathed $25,000 cash, and $100 per week, to her mother, and the residue, after the payment of a small legacy, to plaintiff. She showed plaintiff this will. He expressed dissatisfaction, telling her that it did not give him all of her property. On September 2, 1943, she made a will in which she bequeathed $25,000, her jewelry and personal effects to her mother, devised her residence property, together with its furniture and furnishings, to her mother for life, remainder to plaintiff, and the residue of her estate to plaintiff, in trust, to pay taxes, expenses, insurance, and $100 a month to her mother for life, when the trust should terminate and go to plaintiff. This will provided that if Mrs. George's mother predeceased her the entire estate should go to plaintiff. She showed this will to plaintiff. He again expressed dissatisfaction, telling her that it did not give him all of her property. On September 15, 1943, she made a will in which she bequeathed her jewelry and personal effects to her mother, directed her executor to pay her mother $100 a week during probate, devised her residence property and its furniture and furnishings to her mother for life, remainder to plaintiff, the residue of the estate to plaintiff, in trust, to pay her mother $100 per week and any income, after payment of expenses and the $100 per week to her mother, to plaintiff. This will provided that the trust should terminate upon the death of her mother and go to the plaintiff and that should her mother predecease her, all of the estate should go to plain-

tiff. It appointed plaintiff executor. Mrs. George showed this will to plaintiff. Again he expressed dissatisfaction, telling Mrs. George that it did not give him all of her property.

On November 9, 1943, Mrs. George made a will in which she bequeathed $3,000 to plaintiff, left her trucks to Frank F. Barham and A. Laurence Mitchell, a legacy of $1,000 to charity, and the residue of her estate to her mother. She told the lawyer who prepared this will that she was not under any obligation to plaintiff and that she was paying him in full for his services.

On January 25, 1944, Mrs. George went to the lawyer who prepared the September 15th and November 9th wills, and asked him to prepare a will leaving all of her property to plaintiff; she said that plaintiff had learned of the will of November 9th leaving the bulk of her estate to her mother; that "he is very incensed, very angry, and he insists I make a will leaving everything, or the bulk of the estate to him"; she said that she did not want to do that, "I will have to do it, though, because I am getting these injections from the doctor, and if I don't make such a will he will leave me." Asked by the lawyer if she wanted to make a will leaving all of her property to plaintiff and omitting her mother, she replied, "No, I don't, but I thought if I made a will like this today, I could come in tomorrow and make another will." The lawyer refused to draw the will. Plaintiff then took Mrs. George to another lawyer. This other lawyer drew a will dated January 25, 1944, in which Mrs. George left all of her property to plaintiff and appointed him executor. Mrs. George showed this will to plaintiff the night of January 25th. He read it, expressed satisfaction and together they put the will away in a highboy. A short time before this will was made Mrs. George had been very ill and in a hospital.

The next day Mrs. George went back to the lawyer who had refused to draw the will on January 25, 1944. He prepared a will dated January 26, 1944. Mrs. George told this lawyer that she did not want plaintiff to know about the will of January 26, 1944, because she thought he might leave her. The will of January 26, 1944, was identical with the will of November 9, 1943. On May 22, 1944, she made a will identical with the will of January 26, 1944, except that it added a legacy of $500 to a friend. This will was admitted to probate as the last will of Mrs. George.

Upon the taking of his deposition plaintiff testified that he did not know the content of any will during the lifetime of

Mrs. George. He also testified upon his deposition that he did not see the will of January 25, 1944, before her death. At the trial he testified that Mrs. George showed him the will of August 27, 1943; that he read it and protested to her that it did not leave all of her property to him; that she showed him the will of September 2, 1943; that he read it and again protested that it did not leave him all of her property; that she showed him the will of September 15, 1943; that he read it and again protested that it did not leave him all of her property; that she showed him the will of January 25, 1944; that he read it to her; that together they put it away.

During the time plaintiff was in the George home Mrs. George had sclerosis of the liver, alcoholic in nature, "her stomach was practically burned up with alcohol," she had severe heart trouble and she required daily intravenous medication. A joint tenancy bank account was opened in the names of Mrs. George and plaintiff about December, 1943. Mrs. George deposited all money ever placed in the account. Plaintiff withdrew and retained the balance of $2,100, a few days before Mrs. George died.

Upon the death of Mrs. George, plaintiff took possession of all her jewelry and some, if not all, of the jewelry of her mother. The executors of the will of Mrs. George brought suit against plaintiff to recover the jewelry. Her mother intervened in the action. In that suit, plaintiff here claimed that Mrs. George had made a gift of the jewelry to him. The executors and Mrs. George's mother recovered judgment for the jewelry. Plaintiff appealed and the judgment was affirmed. (See *Barham* v. *Khoury*, 78 Cal.App.2d 204 [177 P.2d 579].) Reference may be made to the opinion in that case for further light upon the dealings had between plaintiff and Mrs. George.

The foregoing recital of facts is made from the evidence by accepting its full force and every inference favorable to respondents which may be drawn therefrom and excluding all evidence in conflict therewith.

The court found that on November 14, 1942, decedent re-employed plaintiff, he having been previously employed by her, and having voluntarily quit the employment shortly before that day; that on that day she employed him to serve her as companion, nurse, business assistant, household assistant, errand runner and message carrier, and to serve, under the directions of other physicians, as her medical doctor; that she

agreed to pay him a salary, provide him with lodging in her home, meals, and the usual conveniences of a household, such as telephone service, use of automobile, etc.; that plaintiff accepted the employment and continued therein until her death; that the compensation paid plaintiff for his services during that period was not less than the fair, reasonable value thereof, and was paid and received as salary and wages for his services; that at the time of accepting such employment plaintiff had no practice as a physician, no office, and no patients, except the deceased; that at the time of entering into the agreement of November 14, 1942, decedent was a frail woman, in bad health; that plaintiff knew her condition would grow progressively worse and that her life expectancy extended, at the most, for only a few years; that the agreement was not reduced to writing and no note or memorandum thereof was ever signed by either party; that in the capacities mentioned, plaintiff served decedent from November 14, 1942, to her death; that he faithfully and ably performed the services; that plaintiff and decedent did not on November 14, 1942, or at any other time, enter into an agreement whereby decedent promised that if plaintiff would serve her in the manner requested, or in any other manner, during the balance of her life, or otherwise, she would leave to him by last will, or otherwise, all or any of her property; that plaintiff suffered no substantial pecuniary loss in having served decedent from November 14, 1942, to her death, and that the compensation he received for such services was commensurate with what he might have received from any other employment or from his profession; that plaintiff's alleged cause of action is barred by the provisions of Civil Code, section 1624, subdivision 6, and Code of Civil Procedure, section 1973, subdivision 6. Judgment followed for defendants. Plaintiff appealed.

It is first contended that the evidence is insufficient to support the findings of fact. Appellant completely overlooks the limitations on the power of a reviewing court. The principles governing the consideration of the case are succinctly stated in *Barham* v. *Khoury,* 78 Cal.App.2d 204, 211 [177 P.2d 579], thus: ''When a judgment is challenged on the ground of the insufficiency of the evidence to support the findings four principles govern the conduct of the reviewing court, namely: (1) When two inferences are reasonably deducible from the facts the appellate court is forbidden to substitute its deductions for those of the trial court; (2) all conflicts must be resolved in favor of respondent and all reasonable inferences

must be indulged in favor of the findings; (3) the power of the appellate court begins and ends with its determination that there is or is not substantial evidence to support the finding. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Federal Construction Co.* v. *Brady*, 122 Cal.App. 446, 447 [10 P.2d 130]); (4) evidence which may in the transcript appear relatively unsubstantial may have been 'overwhelming in its persuasiveness' when recited in the presence of the court. (*Estate of Bristol, supra.*)''

██ The burden was on the plaintiff to establish: (1) the oral agreement by full, clear, and convincing evidence (*Wilson* v. *Bailey*, 8 Cal.2d 416, 424 [65 P.2d 770]; *Notten* v. *Mensing*, 3 Cal.2d 469, 477 [45 P.2d 198]); (2) that the agreement was founded upon an adequate consideration (*Notten* v. *Mensing*, 20 Cal.App.2d 694, 698 [67 P.2d 734]); and (3) that plaintiff suffered an unjust and unconscionable injury and loss by reason of the failure of decedent to bequeath and devise all of her property to him—estoppel. (*Wilson* v. *Bailey*, 8 Cal.2d 416, 421 [65 P.2d 770]; *Notten* v. *Mensing*, 3 Cal.2d 469, 476 [45 P.2d 198].) If plaintiff failed to prove the alleged oral agreement by full, clear and convincing evidence, or if from the evidence the trial court was justified in finding that the alleged oral agreement was never made, then the findings are supported and the other issues are immaterial. Whether the evidence is full, clear and convincing is primarily a question for the trial court. (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3]; *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583].) ██ The only testimony of the alleged agreement was that of plaintiff in which he purported to give the statements or declarations of a deceased person. Such evidence is said ''to be in its nature the weakest and most unsatisfactory.'' (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 560 [299 P. 529].) ''No weaker kind of testimony could be produced.'' (*Belletich* v. *Pollock*, 75 Cal.App.2d 142, 147 [171 P.2d 57].) We may not say that the evidence is, or is not, full, clear, and convincing. The credibility and weight of the evidence are exclusively for the trial court. (*Viner* v. *Untrecht, supra.*) It is most significant that the written agreements of July 11th, 1940, December 11th, 1940, and January 9th, 1941, did not contain any provision with respect to Mrs. George's leaving her property to plaintiff and that he did not mention the subject to Mr. Breslin.

██ A confidential relationship existed between plaintiff

and decedent. ▮ The law presumes that any agreement made between plaintiff and decedent was obtained by the exercise of undue influence by plaintiff upon decedent. In *Ross* v. *Conway,* 92 Cal. 632 [28 P. 785], the court said (p. 635) : "The rule is inflexible that no one who holds a confidential relation towards another shall take advantage of that relation in favor of himself, or deal with the other upon terms of his own making; that in every such transaction between persons standing in that relation the law will presume that he who held an influence over the other exercised it unduly to his own advantage, or, in the words of Lord Langdale in *Casborne* v. *Barsham,* 2 Beav. 78, 'the inequality between the transacting parties is so great, that, without proof of the exercise of power beyond that which may be inferred from the nature of the transaction itself, this court will impute an exercise of undue influence'; that the transaction will not be upheld, unless it shall be shown that such other had independent advice, and that his act was not only the result of his own volition, but that he both understood the act he was doing and comprehended its result and effect. This rule finds its application with peculiar force in a case where the effect of the transaction is to divert an estate from those who by the ties of nature would be its natural recipients, to the person through whose influence the diversion is made, whether such diversion be for his own personal advantage, or for the advantage of some interest of which he is the representative. It has been more frequently applied to transactions between attorney and client or guardian and ward, than to any other relation between the parties, but the rule itself has its source in principles which underlie and govern all confidential relations, and is to be applied to all transactions arising out of any relation in which the principle is applicable." (See, also, *Estate of Cover,* 188 Cal. 133, 144 [204 P. 583] ; *Herbert* v. *Lankershim,* 9 Cal.2d 409, 426 [71 P.2d 220].) ▮ This presumption is evidence. Standing alone it supports a finding against contradictory evidence offered by plaintiff. (*Lieber* v. *Rigby,* 34 Cal.App.2d 582, 584 [94 P.2d 49].) ▮ It was for the trial court to say whether the evidence offered by plaintiff outweighs the presumption. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 555 [299 P. 529] ; *People* v. *Chamberlain,* 7 Cal.2d 257, 260 [60 P.2d 299] ; *Lane* v. *Whitaker,* 50 Cal.App.2d 327, 330 [123 P.2d 53] ; *Fortier.* v. *Hogan,* 115 Cal.App. 50, 58 [1 P.2d 23].)

█ Application of these rules of law to the evidence recited warranted the trial judge in finding that Mrs. George did not at any time make an oral agreement with plaintiff to bequeath and devise all or any of her property to him.

Appellant claims that the court failed to make findings upon material issues of fact. There is no basis for the claim. The vital issues were: Was the oral contract made? If so, was the consideration adequate? If so, did plaintiff suffer an unjust and unconscionable injury and loss? The court found against plaintiff on these and all other material issues. The findings support the judgment. The matters as to which complaint is made are evidentiary or immaterial matters, or covered by the findings made. As the finding that the alleged oral contract was not made is supported by the evidence, or lack of it, all other issues are immaterial and findings with respect to them unnecessary. █ A failure to find on an issue not necessary to support a judgment is harmless. (2 Cal. Jur., § 614, p. 1032.)

█ Appellant says that in any event he is entitled to a judgment for damages upon the theory that he should recover the reasonable value of the services rendered. The complaint did not allege the reasonable value of the services. It did not allege that plaintiff had duly presented a claim against the estate of decedent and that it had been rejected. It did not pray for anything except quasi-specific performance. The case was not tried upon the theory that plaintiff was seeking to recover the reasonable value of the services rendered. █ Recovery can be had on a *quantum meruit* only upon pleading and proof that the plaintiff duly presented a claim against the estate of the decedent, which was rejected by the executor. (*Neel* v. *Barnard*, 24 Cal.2d 406, 414 [150 P.2d 177] ; *Hays* v. *Bank of America*, 71 Cal.App.2d 301, 304 [162 P.2d 679].) *Zellner* v. *Wassman*, 184 Cal. 80 [193 P. 84], cited by appellant, is not in point. The distinction is obvious from the statement of the court that (p. 84) ''The complaint is drawn upon two theories: (1) That plaintiff is entitled to specific performance of the alleged agreement; (2) that the action is a suit at law upon a claim against the estate of the decedent, duly presented and rejected by the administrator.'' Further, the court found that appellant was fully paid for his services at the rate contracted for.

Judgment affirmed.

Shinn, Acting P. J., and Wood, J., concurred.