[Civ. No. 16473. Second Dist., Div. Three. Mar. 24, 1949.]

Estate of BETTY MAE BEST, Deceased. LORENA G. EGGE, Respondent, v. AVIS F. ROYER, Appellant.

Reynolds, Painter & Cherniss for Appellant.

Roland G. Swaffield for Respondent.

VALLÉE, J.—Appeal from an order of the probate court decreeing that certain real property and the income and increment therefrom claimed by a coexecutrix is a part of the assets of the estate, ordering the coexecutrix to file an account and removing her from office. Appellant and respondent are coexecutrices of the estate of Betty Mae Best, whose true name was Betty M. Miller. The controversy centers around a deed executed by appellant in December, 1941, or early January, 1942, conveying to the deceased the north half of a 20-acre orange grove situate in the county of Orange. In April, 1939, the deceased had conveyed the entire 20 acres to appellant.

Appellant's assignments of error are: 1. The evidence is insufficient to support the findings. 2. Declarations of the grantor made out of presence of the grantee in disparagement of the grantor's deed were erroneously admitted in evidence. 3. Declarations of the grantor made in the presence of the grantee at the time of the transaction and bearing on the grantor's intent to deliver the deed when such intent was in issue were erroneously excluded from the evidence. Appellant claims that there is no substantial evidence to support the court's finding that the deed of December, 1941, or January, 1942, was delivered unconditionally. She claims that it was her intent and that of the deceased that the deceased should hold it only temporarily and should later return it.

Viewing the evidence in the light most favorable to respondent, drawing all inferences in her favor and disregarding all conflicting and contradictory evidence (*Khoury* v. *Barham,* 85 Cal.App.2d 202, 210 [192 P.2d 823]), the facts are these:

Appellant and respondent are half sisters. On January 23, 1936, the deceased, mother of the parties, acquired a parcel of real property in the county of Orange, consisting of about 20 acres of citrus fruit. On May 4, 1936, the deceased conveyed to appellant the south half of the property. On April 1, 1938, appellant reconveyed the south half to the deceased. On April 22, 1938, the deceased and appellant joined in executing a deed of trust of the 20 acres to secure an indebtedness. Prior to March, 1939, the deceased married a Mr. Miller. In March or April, 1939, she was having trouble with him. He was continually wanting an interest in the ranch. The deceased wanted to take the property out of her name and asked respondent if she would be willing to take title and sign an agreement that she was holding it in trust for the

deceased. Respondent declined. In March or April, 1939, the deceased asked a son if he would take title. He declined. Later in April, 1939, the deceased conveyed the entire 20 acres to appellant. In May or June, 1939, the deceased told respondent that she had placed the title to the ranch in the name of appellant and that appellant had given her an agreement back.

At the time of the execution of the deed of April, 1939, two installments upon a first trust deed were due and there was a balance owing to a bank on a crop mortgage of about $5,000. Appellant testified that the reason her mother deeded the 20 acres to her in April, 1939, was that a foreclosure was being threatened; that she had other property and was afraid a deficiency might be taken against her. Appellant gave no consideration for the deed of April, 1939. After the execution of this deed, about June, 1939, a loan of $200 was obtained from a bank on the crop evidenced by a note signed by appellant and the deceased. In 1939 and after the execution of the deed of April, appellant and her mother negotiated for the sale of the crops and went to different buyers for the purpose of arranging a sale. On one occasion the deceased did such negotiating alone. Some time after April, 1939, the deceased and appellant executed an application for reamortization of the first trust deed on the property. The name of the deceased was never taken off the notes secured by the crop mortgage. On one occasion after 1939 the deceased listed the ranch for sale with a man in San Diego. In 1940, additional moneys were borrowed on a crop mortgage evidenced by notes signed by appellant and the deceased.

. E. R. Lewis, a fruit buyer, testified that he knew the 20-acre property, that he first met the deceased in 1940, the appellant in 1941, and the petitioner (respondent) in 1942. He saw the deceased at the ranch many times. During the picking of fruit, she was there every day as long as the picking lasted. She worked on the ranch in 1940 and 1941, irrigating and distributing snail bait. He purchased the crop in 1940 and did the negotiating with the deceased. He made her an offer, which she declined. She made a counteroffer, which he accepted. She told him they would have to go to the bank and draw some papers, which they did. In 1941, the deceased asked Mr. Lewis to look over the crop. He did. They agreed upon a satisfactory price and signed a contract.

Frank Belmont, a fruit shipper, testified that he first met the deceased in 1940 or 1941. She asked him for a loan to

care for the crop. The loan was not made. At a later time he met the deceased with appellant. The deceased again asked for a loan. Mr. Belmont told her that he would have to have an agreement and that both would have to sign the papers. The deceased told him that the property stood in appellant's name and asked, "Why should the daughter sign the papers since it wasn't her property?" Mr. Belmont told her that if the daughter held the property in her name but the deceased owned the property it would be necessary to have both of their names on the paper. The loan was not made.

In late December, 1941, or early January, 1942, appellant signed, acknowledged and delivered to the deceased a grant deed conveying to her the north half of the property. This deed was prepared by a notary public at the direction of the deceased. After it was signed and acknowledged the notary handed it to appellant who handed it to the deceased. It was never recorded. Appellant's testimony was to the effect that she gave her mother this deed to enable her mother to obtain an agreement from her husband Miller, by which Miller would agree to do the labor on the ranch or have it done and take care of the expenses and by which he would agree to pay whatever expenses could not be obtained out of the ranch. She testified that her mother told her that Miller would not do these things unless he saw a deed to the property so he knew he was going to get something out of it and that her mother said that when the agreement was obtained from Miller the deed would be returned to her. She testified that later when it became evident that Miller was not going to do the work or sign an agreement the deceased told her that she could do as she pleased with the deed.

Appellant also testified that about three weeks before her mother's death and at her request, a box containing her papers, including the unrecorded deed, was taken from the back of her car and placed in the back of appellant's car; that deceased had put the deed in the box with her other papers shortly after it had been delivered to her, and that on the day she died, February 12, 1942, at the request of her mother, appellant moved the box back into her mother's car because she was going to have her car repaired. She also testified that at that time she had a box of her own papers in her car which she did not transfer to her mother's car.

On the day the deceased died the deed with other papers belonging to her was in a satchel in her car. She drove from her home to a "beauty parlor" with the papers in her car.

She died at the beauty parlor. A friend drove the car back to her home. That evening the satchel containing the deed and papers of the deceased was taken out of her car and to the office of respondent's husband. Respondent took the deed out of the satchel in appellant's presence. Appellant testified that she said, "That is mine," and that respondent said, "If this is yours, you take it," and that she took it. She testified that several weeks later she destroyed it by tearing it into small bits which were thrown into the fireplace in the home of a Mr. and Mrs. Woodward. At a prior hearing in the probate court she testified that she was on the highway near the ranch when she destroyed the deed. Neither Mr. nor Mrs. Woodward was called as a witness.

During the morning of the day she died the deceased told respondent that appellant had made a deed to her of the north half of the property; that it would be in her papers; that she was carrying her papers with her at all times wherever she went and if anything happened to her respondent should get the papers. During that morning up to the time she went to the beauty parlor the deceased kept the satchel with her. When the satchel was opened after her death appellant stated to those present that in case anything happened she had promised her mother she would turn the ranch over to the rest of the children and she intended to do so. She stated that the deed which she had given her mother was not really good as it could not be recorded after death. She stated to them that her mother did not want Miller to get the ranch, or any part of it. The night her mother died appellant asked that she be permitted to take her mother's papers with her that night. She said she would bring them back in the morning and that they would all go over them at that time. She took the papers in the satchel. About two weeks later appellant handed the satchel to respondent, who opened it. There were only a few papers in it. Respondent asked what had happened to the papers. Appellant stated that she had taken out all of the papers that pertained to the ranch and a lot of inconsequential papers. Respondent asked where the unrecorded deed to the ranch was. Appellant stated that it was not in the papers and she did not know where it was; that she thought perhaps Miller might have found it. Appellant said, "It don't make any difference anyway about that because I intend to turn the ranch over to the rest of you, and this lawyer told mother that it was of no value anyhow." In

June, 1942, appellant told respondent that she had destroyed the deed.

The evidence fully supports the finding of the court that the deed to the north half of the property executed in December, 1941, or January, 1942, was delivered with the intent that it should become operative as such; that in parting with the possession of the deed appellant intended to divest herself of title, and that the deed had never been redelivered by the deceased to appellant with the purpose and intention of vesting the title in appellant.

The court over the objection of appellant admitted in evidence declarations of the deceased made to respondent and to a brother of the parties before the execution of the deed of April, 1939. Those declarations were those in which deceased told respondent and the brother separately that she was having trouble with her husband; that he was continually wanting an interest in the ranch and that she wanted the property out of her name, asking each of them to take title and sign an agreement to the effect that the property was held in trust and that each had declined. Other declarations admitted over objection were that after the deed of April, 1939, the deceased told respondent that she had put the ranch in appellant's name and that appellant had given an agreement back. Others were that about a week before her death when the brother and the deceased were going over some papers, he saw the deed of December, 1941, or January, 1942, which she handed to him. He asked her, ''Why don't you get the deed arranged so you can sell your half of it to Avis, you still have her half if you don't get together, and she said that she—no, that is not correct, she said, 'I have it fixed that way now.' '' Appellant claims that the admission of these declarations was erroneous and prejudicial. None of them was made in the presence of appellant.

We deem it unnecessary to pass upon the admissibility of these declarations. Their admission was not prejudicial. Appellant testified that the April, 1939, deed to her was without consideration and that it was made because the deceased wished to place the property out of her name because of fear of a deficiency in the event of a threatened foreclosure. After this deed was executed the deceased exercised numerous acts of dominion over the property compatible with continued actual ownership. The evidence, other than the declarations the admission of which is complained of, establishes that the deed of April, 1939, vested title to the north half of the property

in appellant merely as a convenience to the deceased. Further, the court found that no agreement back as mentioned in the declarations had been executed by appellant. We do not perceive any prejudicial error in the admission of the conversation had by the brother with the deceased a week before her death. It is an admitted fact that appellant executed the deed of December, 1941, or January, 1942, and that the deceased had it in her possession at the time of the conversation. The conversation was merely to the same effect.

■ Appellant claims that the court committed prejudicial error in excluding declarations of the appellant made in the presence of the deceased bearing upon appellant's intent in executing the deed of December, 1941, or January, 1942. In the early part of a rather protracted trial, appellant testified that she had conversations with the deceased prior to and at the time of the execution of the deed. In ruling on objections to the conversations, the court restricted the witness to what the deceased had said and did not permit appellant to testify to what she had said. The error, if any, was cured. In later stages of the trial all material matters previously excluded were received in evidence.

After a review of the entire cause, including the evidence, we cannot say that any error complained of has resulted in a miscarriage of justice.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1949.