[Civ. No. 14476. First Dist., Div. One. July 26, 1950.]

Estate of FRED FRANK KROMREY, Deceased.

Estate of AUGUST KROMREY, Deceased.

Estate of AGNES KROMREY, Deceased.

GEORGE HEWLETT, Appellant, v. AMANDA MATILDA McDONALD, as Administratrix, etc., Respondent.

George K. Ford and Simpson Finnell, Jr., for Appellant.

James F. Brennan for Respondent.

SCHOTTKY, J. pro tem.—On June 6, 1949, orders were filed by the superior court removing George Hewlett as administrator in each of the estates of Fred Frank Kromrey, August Kromrey and Agnes Kromrey, and granting letters of administration to Amanda M. McDonald. Hewitt has appealed from such orders, and the three appeals have been consolidated.

Before discussing the legal questions involved, we shall summarize briefly the factual situation as shown by the record.

George and Fred Kromrey and their mother and father, Agnes and August Kromrey, lived together in a flat on Clayton Street in San Francisco. Fred died in December of 1943 and George was appointed administrator, with Hewlett as attorney. In May and June of 1947, the mother and father died, and George Kromrey became administrator of their estates. He was the sole heir and owner of the three estates.

Mrs. Amanda Matilda McDonald was a trained nurse, who with her husband lived in the flat below the Kromreys, from whom they rented, and at times she cared for the mother and father. After their death she cared for George Kromrey. He suffered from a tumor on his brain and had periods of blackout and mental confusion. He spent most of his time in the flat of the McDonalds and ate most of his meals there.

On October 28, 1948, George Kromrey evidently was overcome with one of his blackout spells, and was found in his flat in a dazed condition by Mrs. McDonald. She called his doctor who sent him to the psychiatric ward of the San Francisco Hospital. Mrs. McDonald learned that Hewlett had been Kromrey's attorney, and telephoned him as to George Kromrey's condition. The following day, according to her testimony, Mrs. McDonald was taken to Hewlett's office by his secretary, Mrs. Montgomery, where Hewlett drew up instruments appointing Hewlett general agent for Kromrey and appointing Hewlett administrator in the place of Kromrey in the estates of his family. Mrs. McDonald then went with Hewlett and his son, Palmer Hewlett, to the hospital to see Kromrey, who was still in a very dazed condition. Mrs. McDonald testified as to his condition: ''Hazy—just hazy, in a sort of halfway stupor, if you can understand that. A haziness —a blank. . . he didn't know anything he was doing—he just did what you told him.'' She also testified that Hewlett had Kromrey sign the papers while she held him up, with the

assistance of Palmer Hewlett. No notarization of the papers was made. They then left the hospital.

The next day, October 30, 1948, Palmer Hewlett and Hewlett's secretary, Mrs. Montgomery, appeared at Mrs. McDonald's flat and announced that they intended, evidently on George Hewlett's instructions, to go up to Kromrey's flat to look for whatever valuables might be there which should be placed in safekeeping. (At the hospital, Kromrey claimed there was approximately $15,000 in his home.) Mrs. McDonald accompanied them, unlocked the door of Kromrey's flat and was present during the search. Eight thousand five hundred dollars or more in cash (according to testimony of Palmer Hewlett and Mrs. Montgomery) was found and this, plus personal property consisting of checks, private papers, stock certificates, old coins, watches, et cetera, was taken by the two, without receipt to Mrs. McDonald, and turned over to George Hewlett, whom they met outside on the street as he was approaching the house.

On November 1, 1948, Hewlett reported to the hospital, contrary to his earlier statement, that Kromrey's property was all tied up in probate and there was not enough to provide for private care. Mrs. McDonald had possession of approximately $31,000 which previously had been turned over to her by Kromrey and, through representations that such sum belonged to the three estates of which Hewlett had been named administrator and that he was general agent for Kromrey, Hewlett prevailed upon Mrs. McDonald to turn the money over to him. A receipt was given to her, and Hewlett placed the sum in a safe deposit box of the American Trust Company in his own name. He similarly placed the money he had earlier obtained from the Kromrey flat.

Thereafter, on November 4, according to Hewlett's testimony, Kromrey asked Hewlett to prepare a will revoking his former wills, and on the following day Hewlett drew one which Kromrey signed, which merely revoked former wills and appointed Hewlett executor, and, as Hewlett explained, "left" his property to his heirs by reason of the will, in that it went by succession. Hewlett testified that he also drew a will for Kromrey in which he left his property to his aunt, Mrs. McKay, but that Kromrey never signed it.

Another son of Hewlett, George, Jr., testified that when visiting Kromrey at the hospital early in November, 1948, Kromrey praised Hewlett and said that he wanted Hewlett

to "have everything." George Hewlett testified that on November 7 Kromrey gave him all his property "verbally," and that on November 8 Kromrey gave it to him by a written instrument, which he had drawn up and Kromrey signed, in the following language: "I have delivered and now confirm delivery to George Hewlett, my good friend, all of my money and personal property, or all to which I am entitled as heir, and I give the same absolutely and he has accepted the same."

Kromrey was subsequently moved to the French Hospital, and then, on December 1, was returned to the apartment house on Clayton Street, where he stayed in Mrs. McDonald's flat, the furniture having been moved out of his own. Hewlett never saw Kromrey after November 30, 1948. Shortly thereafter he received a letter dated December 1, 1948, and signed with Kromrey's name, rescinding the power of attorney given him; and in an envelope postmarked January 14, 1949, he received notices of hearing for the revocation of letters of administration in the estates of Agnes, August and Fred Kromrey, which was set for January 28.

After Kromrey was taken home from the French Hospital, Hewlett sought to have him returned to the hospital on the theory that he was in a critical condition (though on the trial Hewlett testified that Kromrey "was not suffering from anything"), and that he had been forcibly removed from the hospital.

After Kromrey had sent Hewlett the letter revoking the power of attorney, numerous attempts were made by Attorney James F. Brennan, in behalf of Kromrey, to get in touch with Hewlett in order to have the money and estate matters straightened out. There is evidence to justify a conclusion that Hewlett was avoiding both Brennan and Kromrey. Hewlett finally appeared in court on February 15, 1949, where he testified that Kromrey had given him the property in question. George Kromrey had died on February 14, 1949.

George Hewlett had been appointed general administrator in the three estates (Fred, Agnes and August Kromrey) on November 15, 1948, pursuant to a petition filed by him on November 3, 1948. On January 11, 1949, George Kromrey, through attorneys Saul Perlis and James F. Brennan, petitioned for Hewlett's removal as such administrator; and on April 12, Mrs. Amanda Matilda McDonald, who had been appointed "Special Administratrix with General Powers of the Estate of George August Kromrey, Deceased," was substituted as petitioner in the petition filed January 11 by

George Kromrey. The petition was granted by minute order of April 18. On June 6, 1949, the court revoked letters of administration issued to George Hewlett and appointed Mrs. McDonald administratrix of the estates of Fred, Agnes and August Kromrey. Notices of appeal from the orders removing him as administrator were filed by Hewlett on August 4. An order consolidating the appeals in the three estates was filed September 29, 1949.

The court in its order removing Hewlett as administrator finds: "That George Hewlett is neither a fit, proper, competent nor qualified person to administer upon said estate. . . . That between October 28, 1948 and December 1, 1948, George Hewlett was acting both as attorney and general agent of George August Kromrey, and by virtue thereof there did exist between them a confidential relationship." The court then continues with statements of claims "by the said petitioners," and subsequently finds: "That George Hewlett did take said cash and personal property into his possession between the dates of October 28, 1948 and December 1, 1948 as the administrator of the above-entitled estate and upon the statement and representation that he was the administrator of the above-entitled estate. . . . That George Hewlett has taken into his possession and control, and does now conceal and maintain in his possession and control, monies in the approximate sum of $45,000.00, and items of personal property consisting of old coins, furniture and clothing, all of which were taken into his possession and control from the premises located at 758 Clayton Street, San Francisco, California, in which George August Kromrey and the above-named decedent resided; that George Hewlett has claimed and does now claim as his own property the aforesaid monies in the approximate sum of $45,000.00 and items of personal property; that by virtue of the claims of George Hewlett, as aforesaid, he has maintained and does now maintain and claim a position adverse to the above-entitled estate and adverse to the best interests thereof, and the maintenance of said position of and by George Hewlett will substantially affect and impair the rights and interest of this estate in and to the monies and personal property referred to hereinbefore; that the removal of George Hewlett as administrator of the above-entitled estate is necessary and essential in order that the above-entitled estate may reclaim and take into its possession such portions of the monies and property taken into the possession of George Hewlett as comprise a part of this estate.

. . . That demands have been made upon George Hewlett prior to the filing of the petition herein for the return of both of the monies and personal property of George August Kromrey and of the monies and property belonging to the above-entitled estate, which were taken into the possession of George Hewlett from October 28, 1948 to December 1, 1948, and that George Hewlett made no reply to such demands, concealed himself and did fail and refuse to see or speak to George August Kromrey prior to his death, or to the petitioner Amanda Matilda McDonald, or their attorneys or agents, and has failed and refused to turn over or relinquish possession of any of the monies or property above mentioned.''

Appellant Hewlett first contends that the court was not justified in removing him as administrator because the evidence was insufficient to establish ''that he was guilty of fraud or wrongful practice as alleged in the petition for his removal.''

The grounds for removal of an administrator are found in section 521 of the Probate Code, which reads: ''Whenever a judge of the court has reason to believe from his own knowledge, or from credible information, that any executor or administrator has wasted, *embezzled or mismanaged,* or is about to waste or embezzle the property of the estate committed to his charge, *or has committed or is about to commit a fraud upon the estate, or is incompetent* to act . . . he must cite such executor or administrator to appear and show cause why his letters should not be revoked . . .'' (Italics added.)

Section 420 of the Probate Code provides that no person is competent to serve as an administrator or administratrix who does not have the qualifications required of an executor or executrix, and section 401 provides: ''No person is competent to serve as an executor or executrix who is under the age of majority, convicted of an infamous crime, or adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or *want of* understanding or *integrity.* . . .'' (Italics added.)

In 11A California Jurisprudence, at page 403, section 283, it is stated: ''The court has a very large discretion in determining whether, upon the facts presented to it, the representative whom it appointed shall either be suspended or removed, and unless it appears that such discretion has been abused, and especially where the evidence is such that different minds might reach different conclusions thereon, the action of the trial court will not be disturbed on appeal. [Citing cases.] It has been

held that an appellate court should not interfere unless it is clearly shown that there has been a gross abuse of discretion. [Citing cases.]''

In the instant case it is clear that the learned trial judge reached the conclusion that appellant Hewlett, an attorney at law, took advantage of the confidential relationship that existed between him and his client, George Kromrey, and thereby improperly gained possession of a large amount of money and other personal property which he claimed was a gift, and that his general conduct in such transaction, and others in connection therewith, was such as to show a lack of integrity to such a degree as to make him unfit to be the administrator of any estate.

Appellant's argument is so unsound and fallacious that it deserves little attention. He argues that no confidential relationship was shown to exist between himself and George Kromrey, and then he argues that the evidence shows that the gift was voluntary and free from undue influence. Appellant ignores entirely the well-established rule that where a confidential relationship exists, and especially one between attorney and client, there is a presumption of undue influence on the part of the attorney, and the law presumes that any agreement or transaction between the attorney and the client was obtained by the exercise of undue influence by the attorney.

In *Ross* v. *Conway*, 92 Cal. 632 [28 P. 785], it was said, at pages 635-636: ''The rule is inflexible that no one who holds a confidential relation towards another shall take advantage of that relation in favor of himself, or deal with the other upon terms of his own making; that in every such transaction between persons standing in that relation the law will presume that he who held an influence over the other exercised it unduly to his own advantage, or, in the words of Lord Langdale in *Casborne* v. *Barsham*, 2 Beav. 78, 'the inequality between the transacting parties is so great, that, without proof of the exercise of power beyond that which may be inferred from the nature of the transaction itself, this court will impute an exercise of undue influence'; that the transaction will not be upheld, unless it shall be shown that such other had independent advice, and that his act was not only the result of his own volition, but that he both understood the act he was doing and comprehended its result and effect. This rule finds its application with peculiar force in a case where the effect of

the transaction is to divert an estate from those who by the ties of nature would be its natural recipients, to the person through whose influence the diversion is made, whether such diversion be for his own personal advantage, or for the advantage of some interest of which he is the representative. It has been more frequently applied to transactions between attorney and client or guardian and ward, than to any other relation between the parties, but the rule itself has its source in principles which underlie and govern all confidential relations, and is to be applied to all transactions arising out of any relation in which the principle is applicable. It is termed by Lord Eldon 'that great rule of the court that he who bargains in any matter of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence.' (*Gibson* v. *Jeyes,* 6 Ves. 278.)'' (See, also, *Estate of Cover,* 188 Cal. 133, 144 [204 P. 583]; *Herbert* v. *Lankershim,* 9 Cal.2d 409, 421 [71 P.2d 220]; *Khoury* v. *Barham,* 85 Cal.App.2d 202, 212 [192 P.2d 823].)

This presumption is evidence. Standing alone, it supports a finding against contradictory evidence offered by appellant. (*Lieber* v. *Rigby,* 34 Cal.App.2d 582, 584 [94 P.2d 49]; *Khoury* v. *Barham, supra.*) It was for the trial court to say whether the evidence offered by appellant outweighed the presumption. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529]; *People* v. *Chamberlain,* 7 Cal.2d 257 [60 P.2d 299]; *Lane* v. *Whitaker,* 50 Cal.App.2d 327 [123 P.2d 53]; *Fortier* v. *Hogan,* 115 Cal.App. 50 [1 P.2d 23].)

Applying these well-settled principles of law to the evidence hereinbefore set forth, the trial judge was fully justified in concluding "That George Hewlett is neither a fit, proper, competent nor qualified person to administer upon said estate." Indeed, it is difficult to understand how counsel for appellant can seriously contend before this court that the record does not support such conclusion of the trial court. The record in the instant case not only justifies but almost compels the conclusion that appellant not only violated the confidential relationship between attorney and client but also violated the ethics of the legal profession. All the perfumes of Araby could not impart a pleasing odor to such a transaction.

Appellant contends that certain other findings included in the order appealed from are not sustained by the record. It is unnecessary to discuss this contention because the finding next hereinbefore discussed that appellant was "neither a fit, proper, competent nor qualified person to administer upon

said estate'' is sufficient to support the order removing appellant as administrator, and such finding is amply supported by the record.

Appellant next contends that the court did not have power to appoint another general administrator while there was still pending an appeal from the order removing him. However, the record shows that the order removing appellant and appointing respondent was entered on ·June 6, 1949, and that no appeal therefrom was filed by appellant until August 4, 1949—59 days afterward. In the meantime, letters of administration were issued to respondent. Upon the filing of the notice of appeal, the powers of respondent as general administrator were, of course, suspended; and it is stated in respondent's brief, and not denied by appellant, that thereafter respondent was appointed special administrator.

No other points raised require discussion.

In view of the foregoing, we conclude that the trial court did not abuse its discretion in determining upon the record in the instant case that appellant should be removed as administrator in each of the three estates, and that the orders appealed from should be, and the same hereby are, affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied August 25, 1950, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1950.